GLANCY BINKOW & GOLDBERG LLP
SUSAN G. KUPFER (SBN 141724)
One Embarcadero Center, Suite 760
San Francisco, CA 94111
Telephone: (415) 972-8160
Facsimile:  (415) 972-8166
E-mail: skupfer@glancylaw.com

MILBERG WEISS LLP
JEFF S. WESTERMAN (SBN 94559)
One California Plaza
300 South Grand Ave., Suite 3900
Los Angeles, CA 90071
Telephone: (213) 617-1200
Facsimile:  (213) 617-1975
E-mail: jwesterman@milbergweiss.com

SUSMAN GODFREY L.L.P.
MARC M. SELTZER (SBN 54534)
1901 Avenue of the Stars, Suite 950
Los Angeles, CA 90067
Telephone: (310) 789-3102
Facsimile:  (310) 789-3006
E-mail: mseltzer@susmangodfrey.com

Interim Co-Lead Counsel for Plaintiffs

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| LAURA ALBEE, JOON CHUNG, JASON LEE aka SANG JIN LEE, TIMOTHY MURPHY, SUNGSHIC PARK, YOON PARK, HOWARD REE, LEON SONG, and EDWARD YOO, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>KOREAN AIR LINES CO., LTD., ASIANA AIRLINES, INC.,<br><br>Defendants. | MDL No. 1891<br><br>Master File No. CV 07-05107 SJO (AGRx)<br><br>**SECOND AMENDED CONSOLIDATED CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED**<br><br>JUDGE:    Hon. S. James Otero |

**NATURE OF ACTION**

1. This antitrust class action arises from a conspiracy to fix, raise, maintain, and stabilize the prices charged for passenger air transportation between the United States ("U.S.") and the Republic of Korea ("Korea").

2. Plaintiffs bring this action to recover treble damages and injunctive relief for violations of Section 1 of the Sherman Act of 1890 ("Sherman Act"), 15 U.S.C. § 1, pursuant to Sections 4 and 16 of the Clayton Act of 1914 ("Clayton Act"), 15 U.S.C. §§ 15, 26.

3. Defendant Korean Air Lines Co., Ltd. ("Korean Air"), Defendant Asiana Airlines, Inc. ("Asiana") (collectively "Defendants") and other alleged co-conspirators provide international air transportation services for passengers. During the period January 1, 2000 continuing at least through August 1, 2007 (the "Class Period"), Defendants were in the business of selling passenger air transportation services between the U.S. and Korea at published fares that included both base fares and at times during the relevant time period, surcharges, including fuel surcharges. (Base fares and surcharges for air transportation services are collectively referred to as "Passenger Airfares").

4. During the Class Period, Defendants and their co-conspirators agreed, combined, and conspired with each other to fix, raise, maintain, and stabilize the prices of Passenger Airfares. As a result of Defendants' unlawful conduct and conspiracy, Plaintiffs and the other members of the Class paid non-competitive and artificially high prices for Passenger Airfares, and have been damaged thereby.

**JURISDICTION AND VENUE**

5. The Court has subject matter jurisdiction over this matter under 28 U.S.C. §§ 1331 and 1337.

6. Venue is proper in this judicial district pursuant to Sections 4(a) and 12 of the Clayton Act, 15 U.S.C. §§ 15, 22, and 28 U.S.C. § 1391(b), (c), and (d),

1  because during the Class Period, Defendants resided, transacted business, were
2  found, or had agents in this district, and a substantial part of the events giving rise
3  to Plaintiffs' claims occurred, and a substantial portion of the affected interstate
4  trade and commerce described below was carried out, in this judicial district.
5  Venue is particularly appropriate in this judicial district for the following reasons:

6      (a) Korean Air's U.S. headquarters (for both its passenger and
7  cargo operations) are located in Los Angeles, California, which is located in this
8  judicial district;

9      (b) Asiana maintains its largest U.S. office in this district;

10     (c) the largest volume of Korean Air passenger traffic in the U.S.
11 departs from or arrives at Los Angeles International Airport, which is also located
12 in this district; and

13     (d) Los Angeles hosts the largest concentration of ethnic Koreans
14 anywhere in the world, outside of Korea itself.  Thus, Defendants' wrongful
15 conduct was likely concentrated in this district, and Defendants' wrongful conduct
16 was aimed at and affected a disproportionate number of class members located in
17 this district.

## THE PARTIES

19     7. Plaintiff Laura Albee is a resident of the State of Florida who purchased
20 passenger air transportation services between the U.S. and Korea from one or both
21 Defendants during the Class Period.

22     8. Plaintiff Joon Chung is a resident of the State of Virginia who purchased
23 passenger air transportation services between the U.S. and Korea from one or both
24 Defendants during the Class Period.

25     9. Plaintiff Jason Lee aka Sang Jin Lee is a resident of the State of New
26 York who purchased passenger air transportation services between the U.S. and
27 Korea from one or both Defendants during the Class Period.

28

10. Plaintiff Timothy Murphy is a resident of the State of Minnesota who purchased passenger air transportation services between the U.S. and Korea from one or both Defendants during the Class Period.

11. Plaintiff Sungshic Park is a resident of the State of New York who purchased passenger air transportation services between the U.S. and Korea from one or both Defendants during the Class Period.

12. Plaintiff Yoon Park is a resident of the State of Virginia who purchased passenger air transportation services between the U.S. and Korea from one or both Defendants during the Class Period.

13. Plaintiff Howard Ree is a resident of the State of California who purchased passenger air transportation services between the U.S. and Korea from one or both Defendants during the Class Period.

14. Plaintiff Leon Song is a resident of the State of California who purchased passenger air transportation services between the U.S. and Korea from one or both Defendants during the Class Period.

15. Plaintiff Edward Yoo is a resident of the State of New York who purchased passenger air transportation services between the U.S. and Korea from both Defendants during the Class Period.

16. Defendant Korean Air is an airline with its World Headquarters located at Korean Air Operations Center, 1370, Gonghang-dong, Gangseo-gu, Seoul, Korea 157-712. Korean Air's headquarters are located in Los Angeles, California. Korean Air's U.S. "passenger" headquarters are located at 1813 Wilshire Blvd., 4th Floor, Los Angeles, CA 90057. Korean Air was established in 1969, and now provides international air transportation to 37 different countries, with more U.S. gateway destinations than any other Asian carrier. During the Class Period, Defendant Korean Air sold Passenger Airfares in this district and throughout the United States.

17. Defendant Asiana is a Korean corporation headquartered at Incheon International Airport, 47 Osae-dong, Kangseo-Ku, Seoul, Korea. Asiana maintains both a sales office and an airport office in Los Angeles. The sales office, located at 3530 Wilshire Blvd., Suite 1700, Los Angeles, CA 90010, also serves as Asiana's primary U.S. office. Asiana was founded in 1988 and provides international air transportation to 17 countries. During the Class Period, Defendant Asiana sold Passenger Airfares in this district and throughout the U.S.

**UNNAMED CO-CONSPIRATORS**

18. On information and belief, during the Class Period, other entities and individuals not named as defendants in this Complaint conspired with Defendants in their unlawful restraint of trade, by participating in, and performing acts and making statements in furtherance of, the unlawful agreements alleged in this Complaint.

**AGENTS**

19. The unlawful acts alleged to have been done by Defendants and their co-conspirators were authorized, ordered, or performed by their directors, officers, managers, agents, employees or representatives while actively engaged in the management, direction, control, or transaction of Defendants' or their co-conspirators' business or affairs. At all relevant times, each Defendant was an agent of the other Defendant or alleged co-conspirators, and, in doing the acts alleged, was acting within the course and scope of such agency. Each Defendant ratified and authorized the wrongful acts of each of the Defendants and their co-conspirators.

**INTERSTATE AND INTERNATIONAL TRADE AND COMMERCE**

20. Throughout the Class Period, contracts, invoices for payment, payments, and other documents essential to the provision of Passenger Airfares between the U.S. and Korea were transmitted in interstate and foreign commerce between and

among offices of Defendants and their customers located in various states in the U.S.

21. Throughout the Class Period, Defendants transported substantial numbers of passengers, in a continuous and uninterrupted flow of interstate and foreign commerce, between various airports in the U.S. and Korea.

22. Throughout the Class Period, the business activities of Defendants and their co-conspirators in connection with their alleged wrongful conduct were within the flow of, and substantially affected, interstate and foreign trade and commerce.

23. Korean Air is the largest passenger carrier from the U.S. to Korea, averaging revenues of more than $250 million per year on those flights. Korean Air's passenger volume on routes between the U.S. and Korea from 2004-2006 was as follows: 2004 – 1,677,888; 2005 – 1,877,347; and 2006 – 1,957,337. During the same period, Asiana's passenger volume on those routes was as follows: 2004 – 768,448; 2005 – 751,556; and 2006 – 829,921. Together, Korean Air and Asiana serve a substantial majority of all passengers flying between the U.S. and Korea. As reported in *The Korea Herald* on August 9, 2004, Asiana and Korean Air "compete as the nation's only two carriers, going head to head on both international and domestic service."

24. Defendants' unlawful activities, as alleged in this Complaint, took place within and affected the flow of interstate and foreign commerce in passenger air transportation services between the U.S. and Korea purchased by customers located in states other than where a Defendant is located, as well as throughout the world, and had a direct, substantial and reasonably foreseeable effect upon interstate, foreign and import commerce in the U.S.

25. During the Class Period, Defendants imported into the U.S. passenger air transportation services between the U.S. and Korea.

## THE MANNER AND MEANS OF THE CONSPIRACY

26. For the purpose of forming and carrying out their alleged combination and conspiracy, Defendants and their co-conspirators did those things that they combined and conspired to do, including:

(a) participating in meetings, conversations, and communications in the U.S. and elsewhere to discuss one or more components of prices for Passenger Airfares for flights between the U.S. and Korea;

(b) agreeing during those meetings, conversations, and communications to artificially fix, raise and maintain one or more price components of the Passenger Airfares for flights between the U.S. and Korea;

(c) levying and establishing artificially high prices to members of the Class in accordance with Defendants' alleged unlawful agreements;

(d) issuing price quotations and charging prices in accordance with Defendants' alleged unlawful agreements; and

(e) engaging in meetings, conversations, and communications in the U.S. and elsewhere for the purpose of monitoring and enforcing adherence to Defendants' alleged unlawful agreements.

## FACTUAL ALLEGATIONS

27. Throughout the Class Period, Korean Air and Asiana both have engaged in the business of selling passenger air transportation services involving flight segments between the U.S. and Korea.

28. During the Class Period, Korean Air and Asiana conspired to fix prices of Passenger Airfares between the U.S. and Korea. To that end, they participated in meetings, conversations and communications, together and with their co-conspirators, in which they agreed on the prices to be charged for Passenger Airfares between the U.S. and Korea, including, but not limited to, agreeing on fuel surcharges.

29. Defendants Korean Air and Asiana have a history of collusive and anticompetitive behavior in other markets. In 2001, the Korean Fair Trade Commission ("KFTC") fined Korean Air and Asiana for conspiring to set domestic passenger air transportation prices in Korea. The KFTC found that the timing and extent of the airlines' domestic price increases indicated prior agreement among the Defendants. At the time, Korean Air paid a criminal fine of 1.77 billion *won* and Asiana paid a fine of 1.26 billion *won*.

30. According to *Yonhap News*, in April 2004 Korean Air and Asiana applied to the Korean Ministry of Construction and Transportation ("MCT") to collect fuel surcharges for their international passenger transportation. The ministry denied their request.

31. In or before March 2005, Defendants agreed to adopt passenger fuel surcharges on certain short and long-haul flights into the South Korean market. *Yonhap News* reported that during March 2005 Defendants submitted a report to the MCT to inform it of their intention to implement passenger fuel surcharges.

32. Beginning in or before April 2005, Defendants adopted passenger fuel surcharges on flights inbound to Korea in identical amounts. *Yonhap News* reported that Defendants agreed to review and, if necessary, to adjust their fuel surcharges at the middle of each month. Research analysts later reported that Defendants adopted the same complex method of adjusting fuel surcharges.

33. On subsequent occasions Defendants adjusted their fuel surcharges at approximately the same time and in the same amounts.

34. In October 2005, *Yonhap News* reported that Defendants would increase base passenger fares between 5 and 10 percent, effective November 1, 2005.

35. In February 2006, it was announced that the KFTC had raided the offices of Korean Air and Asiana as part of an investigation into fuel surcharges relating to probes in Europe and the U.S.

36. As part of its Antitrust Division's ongoing investigation into the air transportation industry, the U.S. Department of Justice ("DOJ") issued a Criminal Information on August 1, 2007 charging Korean Air with conspiring with an unnamed co-conspirator from January 2000 to July 16, 2006, to fix prices charged to their customers for passenger flights between the U.S. and Korea.

37. That same day, the DOJ announced that Korean Air had agreed to plead guilty and pay a criminal fine for its role in the price-fixing conspiracy.

38. In its article on the Korean Air guilty plea, *The Korea Times* reported on August 2, 2007 that a spokesperson for "Asiana, another Korea suspect, said it is waiting for a ruling" from the DOJ and "had supplied requested information to the authorities."

39. On August 23, 2007, Korean Air appeared in the U.S. District Court for the District of Columbia and formally pled guilty to criminal antitrust violations for its role in price-fixing conspiracies concerning both air cargo and air passenger transportation. It paid a criminal fine of $300 million dollars. In its plea, it admitted participation in a conspiracy with another trans-Pacific passenger airline, the primary purpose of which was to suppress and eliminate competition for Passenger Airfares on flights from the U.S. to Korea. Korean Air admitted that it engaged in discussions and attended meetings with representatives of another trans-Pacific airline in furtherance of the conspiracy to fix the prices of Passenger Airfares.

40. Korean Air and Asiana are both members of the Association of Asia Pacific Airlines ("AAPA"), a trade association that has been in existence for more than 40 years. AAPA's purposes include "foster[ing] close cooperation" and "enhanc[ing] the role of major airlines for international cooperation and growth." This common association facilitated the exchange of information about pricing and market conditions between Korean Air and Asiana. During the Class Period, key

1 topics at AAPA meetings included fuel costs, cost containment and effects on
2 profitability.

3    41.    Under the plea agreement, Korean Air has agreed to cooperate with the
4 DOJ's ongoing investigation into price-fixing in the air transportation industry.
5 Plaintiffs are informed and believe and therefore allege that the U.S. government's
6 investigation is continuing as of this date and reserve the right to supplement their
7 allegations as additional information becomes available.

## **FRAUDULENT CONCEALMENT**

9    42.    Throughout the relevant period, Defendants and their co-conspirators
10 affirmatively and fraudulently concealed their unlawful conduct from Plaintiffs and
11 the Class.

12    43.    Plaintiffs and the members of the Class did not discover, and could not
13 have discovered through the exercise of reasonable diligence, that Defendants were
14 fixing the prices of Passenger Airfares, as alleged in this Complaint, until shortly
15 before this litigation was commenced.  Nor could Plaintiffs and the members of the
16 Class have discovered the violations earlier than that time because Defendants and
17 their co-conspirators conducted their conspiracy in secret, affirmatively concealed
18 the nature of their unlawful conduct and acts in furtherance thereof, and
19 fraudulently concealed their activities through various other means and methods
20 designed to avoid detection.  The conspiracy was by nature self-concealing.

21    44.    Plaintiffs and the members of the Class did not become aware of the
22 alleged conspiracy until on or about August 1, 2007, when the DOJ publicly
23 announced Korean Air's guilty pleas and criminal fines with regard to the price-
24 fixing of Passenger Airfares by Korean Air and its unnamed co-conspirator.
25 Plaintiffs and the members of the Class did not and could not have discovered
26 Defendants' conspiracy earlier than August 1, 2007 through the exercise of

reasonable diligence because of Defendants' active and purposeful concealment of their unlawful activities.

45. Defendants and their co-conspirators affirmatively concealed their conspiracy in at least the following respects:

(a) by agreeing amongst themselves not to discuss publicly, or otherwise reveal, the nature and the substance of the acts and communications in furtherance of their illegal scheme;

(b) by engaging in secret meetings, conversations, and communications in order to further their illicit conspiracy;

(c) by publicly giving false and pretextual reasons for their pricing of Passenger Airfares, and for the increases in those prices during the Class Period, and by falsely describing such pricing and increases as being the product of external cost increases and unilateral decisions, rather than collusion; and

(d) by effectively denying any price-fixing of Passenger Airfares in their public statement.

46. As a result of Defendants' fraudulent concealment of their conspiracy, Plaintiffs, on behalf the themselves and the Class, assert that any applicable statute of limitations affecting their rights of action against Defendants was tolled until August 1, 2007, when Defendants' conspiracy was publicly revealed by the DOJ.

## CLASS ACTION ALLEGATIONS

47. Plaintiffs bring this action on their own behalf and as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of the following Class:

> All persons and entities (excluding governmental entities, Defendants, and Defendants' respective predecessors, subsidiaries, affiliates, and business partners, and their co-conspirators) who purchased Passenger Airfares for routes that included a flight segment between the United

States and the Republic of Korea on the airlines of Defendants, their co-conspirators or any predecessor, subsidiary, or affiliate or business partner of each, or their agents, at any time from January 1, 2000 through August 1, 2007.

48. Because such information is in the exclusive control of the Defendants, Plaintiffs do not know the exact number of members in the Class. However, based on estimated passenger flight volume information and due to the nature of trade and commerce involved, Plaintiffs believe that the members number in the many thousands and are sufficiently numerous and geographically dispersed throughout the U.S. and Korea so that joinder of all Class members is impracticable.

49. There are questions of law and fact common to the Class, including:

(a) whether Defendants engaged in a combination or conspiracy to fix, raise, maintain, and stabilize the prices for Passenger Airfares between the U.S. and Korea;

(b) the duration of the conspiracy and the nature and character of the acts performed by Defendants in furtherance of the conspiracy;

(c) whether Defendants violated Section 1 of the Sherman Act;

(d) whether the conduct of the Defendants caused injury to the businesses or property of Plaintiffs and the members of the Class;

(e) the effect of Defendants' conspiracy on prices of Passenger Airfares charged to Class members during the Class Period;

(f) whether Defendants fraudulently concealed their conspiracy so as to equitably toll any applicable statutes of limitation;

(g) the appropriate measure of damages sustained by Plaintiffs and Class members; and

(h)    whether the Class is entitled to injunctive relief to prevent the continuation or recurrence of the violations of Section 1 of the Sherman Act alleged in this Complaint.

50.    Plaintiffs' claims are typical of the claims of the Class members on whose behalf they are asserted because the claims arise from the same common course of conduct of Defendants and the relief Plaintiffs seek is common to the members of the Class.

51.    Plaintiffs will fairly and adequately protect the interests of the Class. Plaintiffs also have no interests that are antagonistic to the members of the Class and have retained counsel competent and experienced in the prosecution of class actions and antitrust litigation to represent themselves and the Class.

52.    The prosecution of separate actions by the individual members of the Class would create a risk of inconsistent or varying adjudications, establishing incompatible standards of conduct for Defendants.

53.    Defendants have acted, and refused to act, on grounds generally applicable to the Class, thereby making appropriate final injunctive relief with respect to the Class as a whole.

54.    The questions of law and fact common to the members of the Class predominate over any questions affecting only individual members.

55.    A class action is superior to other available methods for the fair and efficient adjudication of this controversy since individual joinder of all damaged Class members is impracticable.  The damages suffered by individual Class members are relatively small, given the expense and burden of individual prosecution of the claims asserted in this litigation.  Absent the availability of class action procedures, it would not be feasible for Class members to redress the wrongs done to them.  The class action device presents fewer case management

1  difficulties and will provide the benefits of unitary adjudication, economy of scale
2  and comprehensive supervision by a single court.

## CLAIM FOR RELIEF
### (Violation of §1 the Sherman Act)

56.  During the Class Period, Plaintiffs and the members of the Class purchased Passenger Airfares from Defendants (or their co-conspirators, agents, predecessors, subsidiaries, affiliates, and business partners).

57.  During the Class Period, Defendants and their co-conspirators engaged in a continuing agreement, understanding, and conspiracy in restraint of trade to artificially raise, fix, maintain, and stabilize the prices of Passenger Airfares in violation of Section 1 of the Sherman Act, 15 U.S.C. § 1.

58.  In formulating and effectuating the alleged contract, combination, or conspiracy, Defendants and their co-conspirators engaged in anti-competitive activities, the purpose and effect of which were to artificially raise, fix, maintain, and stabilize the prices of Passenger Airfares. These activities included:

(a)  agreeing to charge prices for base fares and surcharges at certain levels and otherwise to fix, raise, maintain, and stabilize the prices of Passenger Airfares;

(b)  charging base fares and surcharges at agreed-upon levels, thereby fixing Passenger Airfares at the agreed-upon rates; and

(c)  subsequently holding meetings, conversations, and communications to monitor and enforce the previously agreed-upon and set prices.

59.  During the Class Period, Defendants sold Passenger Airfares in a continuous and uninterrupted flow of interstate, import and foreign commerce. Defendants received payment for such services across state and national boundaries. Defendants' activities, and the sale of their Passenger Airfares, have

both taken place within, and have had a substantial anticompetitive effect upon, interstate commerce within the U.S., import commerce and foreign commerce.

60. Plaintiffs, on behalf of themselves and the Class, seek injunctive relief and treble damages, and such other relief that the Court deems necessary and appropriate.

61. The combination and conspiracy had the following effects, among others:

    (a) the prices charged by Defendants, and paid by Plaintiffs and the members of the Class, for Passenger Airfares on flights between the U.S. and Korea were fixed, raised, maintained and stabilized at artificially high and non-competitive levels;

    (b) Plaintiffs and the members of the Class have been deprived of free and open competition in the purchase of Passenger Airfares from Defendants on flights between the U.S. and Korea; and

    (c) Plaintiffs and the members of the Class have been required to pay more for Passenger Airfares purchased from Defendants in the U.S. and Korea than they would have paid in a competitive marketplace absent Defendants' price-fixing conspiracy.

62. As a direct and proximate result of Defendants' illegal conspiracy, Plaintiffs and the members of the Class have been injured and financially damaged in their respective businesses and property, in an amount to be determined according to proof at trial.

### **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs request:

    (a) That the Court determine that this action may be maintained as a class action under Rule 23(a) and Rules 23(b)(2) and (3) of the Federal Rules of Civil Procedure, determine that the Plaintiffs seeking to represent the Class are adequate

- 14 -

1  Class representatives, and direct that reasonable notice of this action, as provided
2  by Rule 23(c)(2) of the Federal Rules of Civil Procedure, be given to members of
3  the Class;
4       (b)   That the Court adjudge and decree that Defendants' contract,
5  combination, and conspiracy alleged in this Complaint are *per se* unreasonable
6  restraints of trade in violation of Section 1 of the Sherman Act;
7       (c)   That Plaintiffs and the members of the Class recover damages, as
8  provided by law, and that a joint and several judgment in favor of Plaintiffs and the
9  Class be entered against Defendants in an amount to be trebled in accordance with
10 the law;
11      (d)   That Defendants and their respective successors, assigns, parents,
12 subsidiaries, affiliates and transferees, and their respective officers, directors,
13 agents and employees, and all other persons acting or claiming to act on behalf of
14 Defendants and their co-conspirators, or in concert with them, be permanently
15 enjoined and restrained from, in any manner, continuing, maintaining or renewing
16 the combination, conspiracy, agreement, understanding or concert of action, or
17 adopting any practice, plan, program or design having similar purpose or effect in
18 restraining competition;
19      (e)   That the Court award Plaintiffs and the members of the Class their
20 attorneys' fees and costs as provided by law;
21      (f)   That the Court award Plaintiffs and the members of the Class pre-
22 judgment and post-judgment interest as permitted by law, and that interest be
23 awarded at the highest legal rate from and after the date of service of the initial
24 complaint in this action; and
25      (g)   That the Court award Plaintiffs and the members of the Class such
26 other and further relief as it deems just, necessary and appropriate.
27
28

|    |    |    |
|----|----|----|
| 1  | DATED:  February 29, 2008 | GLANCY BINKOW  & GOLDBERG LLP |
| 2  |    |    |
| 3  |    | By:  /s/ Susan G. Kupfer |
| 4  |    | SUSAN G. KUPFER |
| 5  |    |    |
| 6  |    | One Embarcadero Center, Suite 760<br>San Francisco, California 94111<br>Telephone: (415) 972-8160<br>Facsimile:  (415) 972-8166<br>E-mail: skupfer@glancylaw.com |
| 7  |    |    |
| 8  | DATED:  February 29, 2008 | MILBERG WEISS LLP |
| 9  |    | JEFF S. WESTERMAN |
| 10 |    |    |
| 11 |    | 300 South Grand Avenue, Suite 3900<br>Los Angeles, CA 90071<br>Telephone: (213) 617-1200<br>Facsimile:  (213) 617-1975<br>E-mail: jwesterman@milbergweiss.com |
| 12 |    |    |
| 13 |    |    |
| 14 | DATED:  February 29, 2008 | SUSMAN GODFREY L.L.P. |
| 15 |    | MARC M. SELTZER |
| 16 |    |    |
| 17 |    | 1901 Avenue of the Stars, Suite 950<br>Los Angeles, CA  90067<br>Tel: (310) 789-3100<br>Fax: (310) 789-3150<br>E-mail: mseltzer@susmangodfrey.com |
| 18 |    |    |
| 19 |    |    |
| 20 |    |    |
| 21 |    |    |
| 22 |    |    |
| 23 |    |    |
| 24 |    |    |
| 25 |    |    |
| 26 |    |    |
| 27 |    |    |
| 28 |    |    |

# JURY TRIAL DEMANDED

Pursuant to Federal Rules of Civil Procedure 38(b), Plaintiffs hereby demand a trial by jury.

DATED: February 29, 2008      GLANCY BINKOW
                                                                                        & GOLDBERG LLP

                                                                                         /s/ Susan G. Kupfer
                                                                                      SUSAN G. KUPFER

One Embarcadero Center, Suite 760
San Francisco, California 94111
Telephone: (415) 972-8160
Facsimile: (415) 972-8166
E-mail: skupfer@glancylaw.com

DATED: February 29, 2008      MILBERG WEISS LLP

                                                                                       JEFF S. WESTERMAN

300 South Grand Avenue, Suite 3900
Los Angeles, CA 90071
Telephone: (213) 617-1200
Facsimile: (213) 617-1975
E-mail: jwesterman@milbergweiss.com

DATED: February 29, 2008      SUSMAN GODFREY L.L.P.

                                                                                       MARC M. SELTZER

1901 Avenue of the Stars, Suite 950
Los Angeles, CA 90067
Tel: (310) 789-3100
Fax: (310) 789-3150
E-mail: mseltzer@susmangodfrey.com