UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

Priority ___
Send ___
Enter ___
Closed ___
JS-5/JS-6 ___
Scan Only ___

| | |
|---|---|
| **CASE NO.:** MDL 07-1891 SJO (AGRx)<br>CV 07-5107 SJO (AGRx)<br>CV 07-6542 SJO (AGRx) | **DATE:** January 17, 2012 |

**TITLE:** Soon Ja Chun, et al. v. Korean Air Lines Co., Ltd.

========================================================================
**PRESENT:** THE HONORABLE S. JAMES OTERO, UNITED STATES DISTRICT JUDGE

Victor Paul Cruz                                    Not Present
Courtroom Clerk                                     Court Reporter

**COUNSEL PRESENT FOR PLAINTIFFS:**        **COUNSEL PRESENT FOR DEFENDANT:**

Not Present                                         Not Present

========================================================================
**PROCEEDINGS (in chambers):   ORDER DENYING DEFENDANT KOREAN AIR LINES CO., LTD.'S MOTION TO DISMISS CASE** [Docket No. 108]

This matter is before the Court on Defendant Korean Air Lines Co., Ltd.'s ("Defendant" or "Korean Air") Motion to Dismiss Case, filed October 31, 2011. Named Plaintiffs Soon Ja Chun, Bernard Jung Kim, and Elizabeth Bahn ("Plaintiffs") filed an Opposition ("Opposition") to the Motion, to which Korean Air filed a Reply ("Reply").  The Court found this matter suitable for disposition without oral argument and vacated the hearing set for January 9, 2012.  *See* Fed. R. Civ. P. 78(b). For the following reasons, Korean Air's Motion is **DENIED**.

I.     BACKGROUND[1]

Asiana Airlines, Inc. ("Asiana") and Korean Air are primary competitors in the air passenger market between the United States ("U.S.") and the Republic of Korea ("Korea").  (Third Am. Compl. ("TAC") ¶¶ 24-25, ECF No. 104.)  On August 1, 2007, the U.S. Department of Justice ("DOJ") charged Korean Air with conspiring with an unnamed co-conspirator from January 2000, to July 16, 2006, to fix prices on passenger flights from the U.S. to Korea.  (TAC ¶ 33.)  Korean Air pled guilty to the charges. (TAC ¶¶ 34, 36.)  Asiana was later identified as Korean Air's co-conspirator. (TAC ¶¶ 38-42.)

---

[1]   A more detailed procedural background of this case can be found in the Court's September 12, 2011 Order granting Plaintiffs leave to file a Third Amended Complaint. (Sept. 12, 2011 Order, ECF No. 101.)  Unless stated otherwise, all citations to the Docket are citations to *Soon Ja Chun, et al. v. Korean Air Lines Co., Ltd.*, Case No. 2:07-CV-06542.

MINUTES FORM 11                                                              __ : __
CIVIL GEN                           Page 1 of 9                Initials of Preparer   vpc

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

| | |
|---|---|
| CASE NO.: MDL 07-1891 SJO (AGRx)<br>CV 07-5107 SJO (AGRx)<br>CV 07-6542 SJO (AGRx) | DATE: January 17, 2012 |

Plaintiffs are individuals who indirectly purchased airline tickets between the United States and Korea from Korean Air or Asiana - that is, Plaintiffs purchased tickets from travel agents or ticket consolidators, not directly from the airlines. (TAC ¶¶ 14-16.) Plaintiffs allege that as a result of Defendant's antitrust violations, Plaintiffs have suffered pecuniary injury by having to pay non-competitive and artificially high prices for airline tickets. (TAC ¶¶ 13-16.)

The TAC sets forth two causes of action, both alleging violations of section 1 of the Sherman Antitrust Act. The first cause of action seeks an injunction restraining Defendant from future antitrust violations of the sort alleged in the TAC. (TAC ¶¶ 76-81.) The second cause of action seeks monetary damages. (TAC ¶¶ 82-89.) Plaintiffs seek to represent two separate classes of plaintiffs: an "Injunctive Relief Class" and a "Damages Class." (TAC ¶¶ 11(a)-(b).)

In the instant Motion, Defendant argues that the TAC should be dismissed in its entirety. With respect to the second cause of action, Defendant argues that the United States Supreme Court opinion *Illinois Brick Co. v. Illinois*, 431 U.S. 720 (1977), prohibits indirect purchasers such as Plaintiffs from bringing actions seeking money damages for violations of the Sherman Act. Plaintiffs agree that *Illinois Brick* largely prohibits Sherman Act lawsuits seeking money damages brought by indirect purchasers, but argues that their case falls into one of the exceptions to the *Illinois Brick* rule. Defendant counters that to the extent Plaintiffs rely on one of the exceptions to the *Illinois Brick* rule, the TAC fails to sufficiently plead the existence of such an exception, and therefore the second cause of action should be dismissed. Defendant also argues that Plaintiffs have failed to state a claim for injunctive relief because Plaintiffs have not alleged that they are likely to suffer harm in the future, and therefore the first cause of action should also be dismissed.

II.     DISCUSSION

     A.     Legal Standard

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the claims asserted in the complaint. *Ileto v. Glock, Inc.*, 349 F.3d 1191, 1199-1200 (9th Cir. 2003). In evaluating a motion to dismiss, a court accepts the plaintiff's material allegations in the complaint as true and construes them in the light most favorable to the plaintiff. *Shwarz v. United States*, 234 F.3d 428, 435 (9th Cir. 2000). Dismissal is proper if the complaint lacks a "cognizable legal theory" or "sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988).

Rule 12(b)(6) must be read in conjunction with Rule 8(a), which requires "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2); *see Ileto*, 349 F.3d at 1200. "While legal conclusions can provide the complaint's framework, they

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

| | |
|---|---|
| CASE NO.: **MDL 07-1891 SJO (AGRx)** <br> **CV 07-5107 SJO (AGRx)** <br> **CV 07-6542 SJO (AGRx)** | DATE: **January 17, 2012** |

must be supported by factual allegations." *Ashcroft v. Iqbal*, __ U.S. __, 129 S. Ct. 1937, 1950 (2009). To plead sufficiently, a plaintiff must proffer "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible when "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S. Ct. at 1949.

    B.    Plaintiffs' Claim for Damages

        1.    The *Illinois Brick* Rule

The parties agree that the Supreme Court decision *Illinois Brick Co. v. Illinois*, 431 U.S. 720 (1977), provides that, except in certain narrow exceptions, indirect purchasers do not have standing to maintain an action for damages under the Sherman Act. *Illinois Brick*, 431 U.S. at 724-29. The two narrow exceptions identified by *Illinois Brick* are: (1) where the indirect purchaser purchases the goods pursuant to a pre-existing cost-plus contract, *id.* at 735-36; or (2) where the direct purchaser is owned or controlled by the indirect purchaser, *id.* at 735 n.16. The second exception has been extended to cases where the direct purchaser is owned or controlled by the defendant. *Del. Valley Surgical Supply, Inc. v. Johnson & Johnson*, 523 F.3d 1116, 1121 (9th Cir. 2008) (citing *Royal Printing Co. v. Kimberly-Clark Corp.*, 621 F.2d 323 (9th Cir. 1980)). Indirect purchasers bringing an action for damages under the Sherman Act must affirmatively plead facts showing that they fall into one of the exceptions to the *Illinois Brick* rule. *Kloth v. Microsoft Corp.*, 444 F.3d 312, 321-22 (4th Cir. 2006).

Plaintiffs argue that the TAC adequately pleads that they (and the putative class members) fall into one or more of the exceptions to the *Illinois Brick* rule. (*See generally* Opp'n.) Defendant argues that the allegations regarding the *Illinois Brick* exceptions are insufficient to survive a motion to dismiss. (*See generally* Mot.)

        2.    Inconsistent Pleading

The TAC alleges that the named Plaintiffs purchased their airline tickets from travel agents. (TAC ¶¶ 61-63.) Korean Air argues that the TAC is inconsistent regarding the status of the travel agents: at some points the TAC alleges the travel agents were controlled by Plaintiffs, at some points the TAC alleges that the travel agents were controlled by Defendant, and at other points the TAC alleges that the travel agents were independent wholesalers. (Mot. 10-12, 14-15.) Korean Air argues that in light of these contradictory allegations, the TAC must be dismissed. (Mot. 14-15.)

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

| | |
|---|---|
| CASE NO.: **MDL 07-1891 SJO (AGRx)** <br> **CV 07-5107 SJO (AGRx)** <br> **CV 07-6542 SJO (AGRx)** | DATE: **January 17, 2012** |

The following is the language from the TAC that Korean Air finds to be self-contradicting:

> To acquire the tickets, [Plaintiff] Chun used the services of travel agents located in the United States, and directed the agents to procure the tickets based on her requirements. The travel agents' actions regarding Chun's indirect purchases of airfare were controlled by Chun.

(TAC ¶ 61.) Identical language exists with respect to the other named Plaintiffs, the only difference being the name of the Plaintiff. (TAC ¶¶ 62-63.) Korean Air argues that through this language, Plaintiffs are trying to establish that the travel agents were controlled by Plaintiffs, thus falling into the *Illinois Brick* exception for direct purchasers controlled by the indirect purchasers. (Mot. 10-12.)

> Class members purchased their tickets indirectly from entities that were owned or controlled by Defendant or its co-conspirators, or from entities that suffered no redressable harm from Defendant's illegal acts because of cost-plus contracts or their economic equivalent, or because airfare charges were billed by the entities to Class members individually and separate from commissions, fees, and other markups.

(TAC ¶ 87.) Korean Air argues that this language attempts to paint the travel agents as controlled by Defendant or its co-conspirators, which also constitutes an exception to the *Illinois Brick* rule, but is inconsistent with the allegation that the travel agents were controlled by Plaintiffs. (Mot. 10-12.)

> Defendant and its co-conspirators also sold H class passenger tickets to travel agents in the United States, who resold the passenger tickets in the Korean ethnic travel market in the United States. The travel agents who bought H class passenger tickets from the defendant for resale in the Korean ethnic travel market in the United States paid a discounted passenger fare or "wholesale fare" for those tickets. During the relevant period, the defendant's wholesale sales of H class passenger tickets to travel agents for flights from the United States to Korea, from certain U.S. cities in which both the defendant and its co-conspirator operated, totaled at least $224.8 million.

(TAC ¶ 30.) Korean Air argues that this language "suggests the travel agents are controlled by neither [] Plaintiffs nor Defendant, but rather are independent, wholesale middlemen who first purchased tickets from Korean Air and then resold those tickets to indirect purchasers at a profit."

| | |
|---|---|
| CASE NO.:  **MDL 07-1891 SJO (AGRx)**<br>**CV 07-5107 SJO (AGRx)**<br>**CV 07-6542 SJO (AGRx)** | DATE:  **January 17, 2012** |

(Mot. 11.)  If this scenario is true, Korean Air argues that Plaintiffs do not fit into any exception to the *Illinois Brick* rule and the second cause of action must fail.  (Mot. 11-12.)

The Court will turn first to the claim that Plaintiffs' characterization of the travel agents as wholesalers fatally contradicts their other allegations.  Importantly, it was not Plaintiffs, but rather Korean Air, that referred to the travel agents as "independent, wholesale middlemen."  (Mot. 11.) Plaintiffs merely stated that the travel agents paid a "wholesale fare" for the tickets and then re-sold them.  (TAC ¶ 30.)  This allegation certainly establishes that the travel agents were middlemen between the airlines and the purchasers.  However, in the language cited, Plaintiffs do not allege that the travel agents were "independent."  Plaintiffs' use of the term "wholesale" does not foreclose the possibility that the travel agents were controlled by either the purchasers or Korean Air (or Korean Air's co-conspirators).  Merriam-Webster defines wholesale (the noun) as "the sale of commodities in quantity usually for resale (as by a retail merchant)."  (MERRIAM-WEBSTER'S COLLEGIATE DICTIONARY (10th ed. 2002).)  And the definition of "wholesale" as an adjective is: "of, relating to, or engaged in the sale of commodities in quantity for resale."  (*Id.*) Nothing in the definition of "wholesale" mandates the conclusion that a wholesaler is necessarily an **independent** middleman, controlled by neither the seller nor the buyer.  The Court does not find that Plaintiffs' use of the word "wholesale" in conjunction with the travel agent's business necessarily contradicts allegations elsewhere in the TAC that the travel agents were controlled by either the purchasers or the airlines.  Nor is there anything else in paragraph 30 of the TAC that is fatally inconsistent with Plaintiffs' other allegations.

Defendant also argues that the allegations regarding whether the travel agents are controlled by the purchasers or the airlines are inconsistent, and must lead to dismissal.  (Mot. 10-12, 14-15.) However, the allegations suggesting that the travel agents were controlled by the purchasers are in the context of the individual named Plaintiffs.  (TAC ¶¶ 61-63.)  The allegations suggesting that the travel agents were controlled by the airlines are in the context of the putative class.  (TAC ¶ 87.)  Plaintiffs explain that this was by design - the individual named Plaintiffs purchased their tickets from travel agents who were controlled by them (the purchasers), but they seek to represent a class that includes all customers who purchased tickets through an intermediary that was controlled **either** by the purchaser **or** by the airlines.  Therefore, Plaintiffs argue that this is not an inconsistency at all, because the allegations are not referring to the same travel agents. The named Plaintiffs' travel agents were controlled by the purchaser.  Some of the travel agents selling to other members of the putative class were controlled by Defendant or its co-conspirators.

Reading the complaint, as the Court must, in the light most favorable to Plaintiffs, the Court cannot say that this is a fatal inconsistency.  The allegations with respect to the named Plaintiffs do not contain an inconsistency at all; they allege that the travel agents were controlled by the named Plaintiff who was the purchaser.  (TAC ¶¶ 61-63.)  Plaintiffs then seek to certify a class that would

**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

| | |
|---|---|
| CASE NO.: **MDL 07-1891 SJO (AGRx)** <br> **CV 07-5107 SJO (AGRx)** <br> **CV 07-6542 SJO (AGRx)** | DATE: **January 17, 2012** |

encompass all indirect purchasers who have standing under an *Illinois Brick* exception, including those who purchased from a middleman controlled by the purchaser, those who purchased from a middleman controlled by the defendant, and those who purchased pursuant to a pre-existing cost-plus contract. (TAC ¶ 87.) As the TAC is not self-contradictory, the Court will not dismiss it on this ground.

        3.      Sufficiency of the Pleadings Regarding the *Illinois Brick* Exceptions

Korean Air also argues that Plaintiffs have not met the pleading standard with respect to the allegations that they fall into one of the *Illinois Brick* exceptions. (Mot. 10-19.) A complaint "does not need detailed factual assertions" to survive a Rule 12(b)(6) motion, but the complaint must provide the grounds of the plaintiff's entitlement to relief, which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. 544, 555 (2007). Alleging facts in a conclusory manner is insufficient, but there is no "probability requirement at the pleading stage." *Id.* at 556. "[A] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable and that a recovery is very remote and unlikely." *Id.* (internal quotation marks omitted).

Korean Air claims that the allegations in the TAC that purport to place Plaintiffs into one of the *Illinois Brick* exceptions are the sort of conclusory, naked assertions that are insufficient to survive a motion to dismiss under *Twombly*. (Mot. 12-13.) With respect to the named Plaintiffs, the only allegation that would place them into an exception to the *Illinois Brick* rule is: "To acquire the tickets, [Plaintiff] Chun used the services of travel agents located in the United States, and directed the agents to procure the tickets based on her requirements. The travel agents' actions regarding Chun's indirect purchases of airfare were controlled by Chun." (TAC ¶ 61; *see also* TAC ¶¶ 62-63 (same, but with other named Plaintiffs).) Korean Air complains that Plaintiffs do not identify any facts reflecting that Plaintiffs controlled the travel agents. (Mot. 12.)

The allegation in the TAC - that the named Plaintiffs controlled the travel agents (TAC ¶¶ 61-63) - is a solid, factual allegation. If Plaintiffs did, as alleged, control the travel agents, then Plaintiffs have standing under one of the exceptions to the *Illinois Brick* rule. Whether the allegation is, in fact, true will be resolved at a later date. For the purposes of a motion to dismiss, the Court assumes that it is true, and that Plaintiffs did control the travel agents. While the allegation could certainly be more detailed - for instance, Plaintiffs could have named the travel agents they used or explained the means through which Plaintiffs controlled the travel agents - such additional detail is not required. *Twombly*, 550 U.S. at 555. Defendant is free to mine for the additional supporting facts in discovery. If, as Defendant suggests, there are no additional facts to support Plaintiffs' allegation of control over the travel agents, then Defendant will prevail on a motion for summary

Case 2:07-cv-05107-SJO-AGR Document 555 Filed 01/17/12 Page 7 of 9 Page ID #:7686

**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

| CASE NO.: | MDL 07-1891 SJO (AGRx) | DATE: | January 17, 2012 |
|---|---|---|---|
| | CV 07-5107 SJO (AGRx) | | |
| | CV 07-6542 SJO (AGRx) | | |

judgment. But the allegation that the purchasers controlled the travel agents is not implausible on its face.

The cases Korean Air relies on do not mandate a different result. Whether a plaintiff adequately pled an exception to the *Illinois Brick* rule is an appropriate inquiry for a motion to dismiss under Rule 12(b)(6). Whether a plaintiff in fact fits into one of the *Illinois Brick* exceptions is properly handled via motion for summary judgment. Many of Korean Air's cases, as Plaintiffs point out (Opp'n 10, n.9), were at the summary judgment stage, and therefore did not concern the sufficiency of the pleadings.

On Reply, Korean Air points to a number of cases where the *Illinois Brick* exception was handled on a motion to dismiss. None of these cases, however, dismissed a complaint based solely on the inadequacy of an allegation in the complaint that would place plaintiff into an *Illinois Brick* exception. In *Warren Gen. Hosp. v. Amgen, Inc.*, 643 F.3d 77 (3d Cir. 2011), the plaintiff alleged that it was a direct purchaser, but the court took judicial notice of the purchase contracts, which proved that plaintiff was an indirect purchaser. *Id.* at 82-83. Here, neither side has asked the Court to take judicial notice of anything that would contradict Plaintiffs' allegation that they controlled the travel agents. In *Kloth v. Microsoft Corp.*, 444 F.3d 312 (4th Cir. 2006), the plaintiffs did not appear to make **any** allegation that would place it into an exception to the *Illinois Brick* rule. *Id.* at 321-24. Here, by contrast, Plaintiffs have made an allegation that the indirect purchasers controlled the direct purchasers, which would fit their case into an exception to the *Illinois Brick* rule. In *Simon v. Keyspan Corp.*, 785 F. Supp. 2d 120 (S.D.N.Y. 2011), the court found that the plaintiff's allegation that he had a cost-plus contract was patently false after taking judicial notice of a standard contract between the direct purchaser and a consumer. *Id.* at 137-37. In the instant case, the Court does not have cause to believe that Plaintiffs' allegations in paragraphs 61-63 of the TAC are a sham, and the Court does not have any judicially noticeable facts that would contradict the allegation. *Apple, Inc. v. Psystar Corp.*, 586 F. Supp. 2d 1190 (N.D. Cal. 2008), did not concern exceptions to the *Illinois Brick* rule at all.

In *In re Ditropan XL Antitrust Litigation*, No. 2006-CIV-1761, 2007 WL 2978329 (N.D. Cal. Oct. 11, 2007), the plaintiff attempted to rely on the exception (not pertinent here) that the direct purchaser was a co-conspirator of the defendant. *Id.* at *4. However, this exception only applies if the co-conspirator is also named as a defendant. Thus, the court held that plaintiff's failure to name the alleged co-conspirator as a defendant meant that plaintiff could not take advantage of that exception to the *Illinois Brick* rule, and dismissed the case on those grounds. *Id.* Failure to join a co-conspirator as a defendant is a flaw that can readily be seen on the face of the complaint, and does not control the instant situation. *Howard Hess Dental Labs., Inc. v. Dentsply Int'l, Inc.*, 424 F.3d 363 (3d Cir. 2005), involved consolidated appeals, one from an order granting summary judgment, the other from an order granting a motion to dismiss. *Id.* at 369. As to the case that

Case 2:07-cv-05107-SJO-AGR   Document 555   Filed 01/17/12   Page 8 of 9   Page ID #:7687

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

| | |
|---|---|
| **CASE NO.:** MDL 07-1891 SJO (AGRx)<br>CV 07-5107 SJO (AGRx)<br>CV 07-6542 SJO (AGRx) | **DATE:** January 17, 2012 |

was on a motion to dismiss, the court actually permitted part of the case to go forward under the co-conspirator exception to the *Illinois Brick* rule, because the plaintiff had named the co-conspirators as defendants. *Id*. at 376-78. (The court dismissed another of plaintiff's theories of liability on the ground that plaintiff conceded that it had not alleged a "complete conspiracy," which the Third Circuit required. *Id*. at 378-84.) Finally, the Supreme Court in *Kansas v. UtiliCorp United, Inc.*, 497 U.S. 199 (1990), did not uphold the dismissal of the complaint because plaintiffs failed to adequately plead an exception to the *Illinois Brick* rule; rather, the Supreme Court held that the exception the plaintiffs purported to rely on - an exception that granted indirect purchasers standing to bring actions for damages under the Sherman Act if suppliers overcharged a public utility for natural gas and the utility passed the overcharge on to its consumers - was not an exception at all. *Id*. at 218-19. If, in the instant case, Plaintiffs sought to rely on an "exception" of their own making, the Court would be authorized to decide if the purported exception is legally tenable and dismiss the case if the Court concluded in the negative. Here, however, Plaintiffs have alleged that they fall into one of the established exceptions to the *Illinois Brick* rule.

Even after *Iqbal* and *Twombly*, plaintiffs do not need to prove their case in their complaint. Plaintiffs have alleged that they (the indirect purchasers) controlled the travel agents (the direct purchasers) who sold them the airline tickets. (TAC ¶¶ 61-63.) This allegation, if true, would mean that Plaintiffs fit into a recognized exception to the *Illinois Brick* rule, and therefore the allegation is sufficient to withstand a motion to dismiss. Accordingly, the Motion to Dismiss the second cause of action is **DENIED**.

    C.    <u>Plaintiffs' Claim for Injunctive Relief</u>

The *Illinois Brick* rule does not bar indirect purchasers from bringing a suit for injunctive relief under the Sherman Act. *Lucas Auto. Eng'g, Inc. v. Bridgestone/Firestone, Inc.*, 140 F.3d 1228, 1235 (9th Cir. 1998). However, Defendant argues that Plaintiffs have failed to sufficiently allege likelihood of future harm such that they would have standing for injunctive relief; Defendant claims that Plaintiffs instead base their claim for injunctive relief on past harm. (Mot. 20.)

Plaintiffs counter that their allegations sufficiently raise the possibility of future harm: Plaintiffs have alleged that Korean Air and Asiana engaged in a price-fixing conspiracy (TAC ¶¶ 34, 36-37, 42, 44, 50); Plaintiffs have alleged that the conspiracy continues to the present (TAC ¶¶ 77, 83-84); Plaintiffs have alleged that substantial barriers to entry exist in the market for air passage travel between the United States and Korea (TAC ¶ 55); Plaintiffs have alleged that the market for flights between the United States and Korea remains concentrated, and Korean Air and Asiana have a 90% market share (TAC ¶ 51). According to Plaintiffs, the same market conditions that led to the initial conspiracy still exist, and therefore there is a real possibility that the illegal conduct will continue in the future. *See In re Static Random Access Memory (SRAM) Antitrust Litigation*, 264

**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

| | |
|---|---|
| CASE NO.: <u>MDL 07-1891 SJO (AGRx)</u><br><u>CV 07-5107 SJO (AGRx)</u><br><u>CV 07-6542 SJO (AGRx)</u> | DATE:  <u>January 17, 2012            </u> |

F.R.D. 603, 610-11 (N.D. Cal. 2009) ("[Indirect Purchaser] Plaintiffs allege that the same market conditions that facilitated the conspiracy from 1996 to 2006 continue today. . . .  Thus, there is alleged a significant risk that the conspiracy will persist or reform in the future."); *see also In re TFT-LCD (Flat Panel) Antitrust Litigation*, 267 F.R.D. 583, 596-97 (N.D. Cal. 2010); *In re Static Random Access Memory (SRAM) Antitrust Litigation*, No. 07-MD-01819, 2010 WL 5071694, at *15 (N.D. Cal. Dec. 7, 2010).  Plaintiffs' allegations suffice to both establish standing and state a claim for injunctive relief under the Sherman Act.  Therefore, the Motion to Dismiss the first cause of action is **DENIED**.

III. <u>CONCLUSION</u>

For the foregoing reasons, Defendant's Motion to Dismiss is **DENIED**.

IT IS SO ORDERED.