| | |
|---|---|
| 1 | LAW OFFICES OF LAWRENCE D. ROHLFING |
| | BRIAN C. SHAPIRO, ESQ. |
| 2 | 12631 East Imperial Highway, Suite 115 C |
| | Santa Fe Springs, CA 90670 |
| 3 | Telephone: (562) 868-5886 |
| | Facsimile: (562) 868-5491 |
| 4 | |
| 5 | LAW OFFICE OF CHESTER H. ARTER, P.C. |
| | CHESTER H. ARTER, III, ESQ. |
| 6 | 11175 Cicero Drive, Suite 100 |
| | Alpharetta, GA 30022 |
| 7 | Telephone: (770) 663-1338 |
| | Facsimile: (770) 456-5262 |
| 8 | Attorneys for Said Nedlouf and Said Nedlouf |
| | as the Executor of the Estate of Mary Kathryn Bizjak |

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| IN RE KOREAN AIR LINES CO., LTD. ANTITRUST LITIGATION | ) MDL No. 07-01891 |
| | ) Master File No. CV 07-05107 SJO (AGRx) |
| This Document Relates To: ALL ACTIONS | ) |
| | ) OBJECTIONS OF SAID NEDLOUF AND THE ESTATE OF MARY KATHRYN BIZJAK TO FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND CLASS COUNSELS' APPLICATION FOR ATTORNEYS' FEES AND NOTICE OF INTENT TO APPEAR |
| | ) Date December 2, 2013 |
| | ) Time: 10:00 a.m. |
| | ) Place: Courtroom No. 1 |
| | ) Judge: Hon. S. James Otero |

COME NOW, Said Nedlouf ("Mr. Nedlouf") and the Estate of Mary Kathryn Bizjak, through Said Nedlouf, Executor, by and through their undersigned counsel and hereby file their Objection to the Motion for Final

Approval of Settlement and Class Counsel's Motion for an Award of Attorneys' Fees and Reimbursement of Expenses (the "Motion") and Notice of Intent to Appear. In support hereof, Mr. Nedlouf states as follows:[1]

## I. Under Rule 23, Preventing An Unfair Settlement Is This Court's Duty.

Both the United States Supreme Court and the Courts of Appeals have repeatedly emphasized the important duties and responsibilities that devolve upon a district court pursuant to Rule 23(e) prior to final adjudication and settlement of a class action suit. *In re Relafen Antitrust Litig.*, 360 F. Supp. 2d 166, 192-94 (D. Mass. 2005) (citing *Amchem Prods., Inc. v. Windsor,* 521 U.S. 591, 617, 623, (1997) for proposition that Rule 23(e) protects unnamed class members from unjust or unfair settlements agreed to by fainthearted or self-interested class representatives); *Reynolds v. Beneficial Nat'l Bank,* 288 F.3d 277, 279-80 (7th Cir. 2002) (district judges should exercise the highest degree of vigilance in scrutinizing proposed settlements of class actions).

Under Rule 23(e) the district court acts as a fiduciary who must serve as a guardian of the rights of absent class members. The court cannot accept a settlement that the proponents have not shown to be fair, reasonable, and adequate. *In re General Motors Corp. Pick-Up Truck Fuel Tank Prod. Liab. Litig.,* 55 F.3d 768, 785 (3d. Cir. 1995) (quoting *Grunin v. International House of Pancakes,* 513 F.2d 114, 123 (8th Cir. 1975)); *see also Riker v. Gibbons,* 2010 WL 4366012, at *2 (D. Nev. Oct. 28, 2010). A trial court has a continuing duty in a class action case to scrutinize the class attorney to see that he or she is

---

[1] Mr. Nedlouf's signed statement – under penalty of perjury – that he purchased a ticket for air passenger travel originating in the United States and ending in Korea on Korean Air Lines or Asiana Airlines is attached hereto as Exhibit A.

adequately protecting the interests of the class. *See* Herbert Newberg & Alba Conte, NEWBERG ON CLASS ACTIONS § 13:20 (4th ed. 2002). Both the class representative and the courts have a duty to protect the interests of absent class members. *Silber v. Mabon,* 957 F.2d 697, 701 (9th Cir. 1992); *accord Diaz v. Trust Territory of Pacific Islands,* 876 F.2d 1401, 1408 (9th Cir. 1989).

It is insufficient that the settlement happened to be at arm's length without express collusion between the settling parties; because of the danger of conflicts of interest, third parties must monitor the reasonableness of the settlement as well. There is a need for special attention when the record suggests that settlement is driven by fees; that is, when counsel receive a disproportionate distribution of the settlement, or when the class receives no monetary distribution but class counsel are amply rewarded. *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1021 (9th Cir. 1998); *accord Staton v. Boeing Co.*, 327 F.3d 938, 964 (9th Cir. 2003) (noting that if fees are unreasonably high, the likelihood is that the defendant obtained an economically beneficial concession with regard to the merits provisions, in the form of lower monetary payments to class members or less injunctive relief for the class than could otherwise have obtained). Because in common fund cases the relationship between plaintiffs and their attorneys turns adversarial at the fee-setting stage, courts have stressed that when awarding attorneys' fees from a common fund, the district court must assume the role of fiduciary for the class plaintiffs. *Vizcaino v. Microsoft Corp.,* 290 F.3d 1043, 1052 (9th Cir. 2002) (quoting *In Re Washington Public Power Supply Sys. Lit.,* 19 F.3d 1291 (9th Cir. 1994)). Accordingly, fee applications must be closely scrutinized. *Vizcaino*, 290 F. 3d at 1052; *see also Synfuel Technologies, Inc. v. DHL Express, Inc.*, 463 F.3d 646, 654 (7th Cir. 2006) ("we note that in [CAFA] . . . Congress required

heightened judicial scrutiny of coupon-based settlements based on its concern that in many cases counsel are awarded large fees, while leaving class members with coupons or other awards of little or no value" and quoting Pub. L. 109-2, § 2(a)(3)(A)); *Kearns v. Ford Motor Co.,* No. CV 05-5644, 2005 WL 3967998, at *1 (N.D. Cal. Nov. 21, 2005) ("In CAFA, Congress put significant limits on so-called coupon settlements which produce hardly any tangible benefits for the members of the plaintiff class, but generate huge fees for the class attorneys.").

## II. The Settlement-Only Classes Require Heightened Scrutiny.

The proposed settlement is a "settlement only class," whereby class counsel seeks to certify a class for settlement purposes only. Many Circuits recognize "the need for courts to be even more scrupulous than usual in approving settlements where no class has yet been formally certified." *In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Products Liab. Litig.* 55 F.3d 768, 805 (3d Cir. 1995); *Mars Steel Corp. v. Continental Ill. Nat'l Bank & Trust Co.*, 834 F.2d 677, 681 (7th Cir. 1987) ("[W]hen class certification is deferred, a more careful scrutiny of the fairness of the settlement is required"); *Weinberger v. Kendrick*, 698 F.2d 61, 73 (2d. Cir. 1982) ("district judges who decide to employ such a procedure are bound to scrutinize the fairness of the settlement agreement with even more than the usual care . . . . Accordingly, we will demand a clearer showing of a settlement's fairness, reasonableness and adequacy and the propriety of the negotiations leading to it in such cases"). Indeed, the Ninth Circuit has adopted the standard enunciated in *General Motors* as its own. *See, e.g., Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026-27 (9th Cir. 1998); *also Dunleavy v. Nadler*, 213 F.3d 454, 458 (9th Cir. 2000).

This need for a heightened standard is because "[p]rior to formal class certification, there is an even greater potential for breach of fiduciary duty owed the class during settlement." *In re Bluetooth Headset Prod. Liab. Litig.*, 654 F.3d 935, 946 (9th Cir. 2011). "Without the benefit of more extensive discovery, both sides may underestimate the strength of the plaintiffs' claims." *General Motors*, 55 F.3d at 789.

Pre-class certification settlements demonstrate that class counsel in the interest of a large fee have an "incentive to act earlier than their clients would deem optimal" in this situation. *Id*. at 802. This behavior is backed by many studies which have demonstrated that pre-class certification classes result in a class member receiving substantially less than class members in post-certified classes. *See, e.g.*, The Federal Judicial Center, *An Empirical Study of Class Actions in Four Federal District Courts: Final Report to the Advisory Committee on Civil Rules (Draft)* Jan. 17, 1996. As a result, "such agreements must withstand an even higher level of scrutiny for evidence of collusion or other conflicts of interest than is ordinarily required under Rule 23(e) before securing the court's approval as fair." *In re Bluetooth*, 654 F.3d at 946 (citing *Hanlon*, 150 F.3d at 1026).

### III. The Class Notice Withholds From Class Members The Most Important Information Concerning The Proposed Settlement.

For class members, the most important aspect of the class notice is the part that tells them how much they will receive if the settlement is approved. Without that information, class members are unable to make an informed, intelligent decision among the several options presented: do nothing, submit a claim, exclude themselves, or object to the proposed settlement. *See* Class Notice, p. 1

(highlighting options). Providing each class member with the information necessary to make this informed decision is no mere procedural nicety; it is the primary purpose of *any* class notice.

Neither the short or long-form class notice in these cases provides any information regarding how much they will receive upon submitting a claim. *See* Class Notices. The only information provided to the class members is that "an average fare by seat class will be assigned for each year" at issue and that fare will be multiplied by the number of seats a class member purchased. *See* Claim Form, p. 1.

There is simply no excuse for pointing obliquely to two settlements that total $86 million in cash and coupons, while withholding from the class their individual shares or information that would allow them to potentially calculate the amount of their share, such as the approximate number of class members that have been identified through discovery. Far from giving class members the information necessary to intelligently weigh their options, the Class Notice fails to provide them the information necessary to make an informed decision. The Class Notice is fatally defective.

**IV. The Coupon Aspect Of The Settlement Is Problematic.**

When Congress passed the Class Action Fairness Act in 2005, it signaled its intent to subject coupon settlements to more penetrating scrutiny. The Senate's Committee Report on the Act is an important reminder of legislative goals:

> [W]here [coupon] settlements are used, the fairness of the settlement should be seriously questioned by the reviewing court where the attorneys' fees demand is disproportionate to the level of tangible, non-speculative benefit to the class members. In adopting [Section 1712(e)'s requirement of a written determination that the settlement is fair, reasonable and adequate], it is the intent of the Committee to incorporate that line of recent federal court precedents in which

> proposed settlements have been wholly or partially rejected because the compensation proposed to be paid to the class counsel was disproportionate to the real benefits to be provided to class members.

S. REP. 109-14, at 31 (2005), *as reprinted in* 2005 U.S.C.C.A.N. 3, 32. Under the Class Action Fairness Act, courts must give heightened scrutiny to coupon settlements. *See* 28 U.S.C. § 1712; *True v. American Honda Motor Corp.*, 2010 WL 707338, at *12 (C.D. Cal. 2010); *Figueroa v. Sharper Image Corp.*, 517 F. Supp. 2d 1292, 1321 (S.D. Fla. 2007); *Kearns v. Ford Motor Co.*, 2005 WL 3967998, at *1 (C.D. Cal. Nov. 21, 2005). Coupon settlements are problematic because: (1) they often do not provide meaningful compensation to class members; (2) they often fail to disgorge ill-gotten gains from the defendant; and (3) they often require class members to do future business with the defendant in order to receive compensation. *See Figueroa,* 517 F. Supp. 2d at 1302; *True*, 2010 WL 707338 at *12. The coupons at issue here exhibit all three problems.

Courts have generally rejected the idea that the face value of coupons or rebates should be used for settlement valuation purposes. *True*, 2010 WL 707338 at *17. Compensation in kind is worth less than cash of the same nominal value. *Id.* (citing *Acosta v. Trans Union, LLC*, 243 F.R.D. 377, 390 (C.D. Cal. 2007); *In re Mexico Money Transfer Litig.*, 267 F.3d 743, 748 (7th Cir. 2001)). The other two prongs of the *Figueroa* test are also in play here. Coupons that are not redeemed cost defendants nothing. But coupons that are redeemed may simply represent a purchase induced by the settlement. In many cases, coupons are not punishment; they are merely the economic equivalent of a court-supervised promotional campaign. *See* Christopher R. Leslie, *The Need to Study Coupon Settlements in Class Action Litigation*, 18 GEO. J. LEGAL ETHICS 1395, 1397 (2005). Furthermore, in order to receive any direct benefit from the settlement,

1 consumers must once again do business with the same companies which plaintiffs
2 allege acted improperly. The coupon requires the claimant to return to the
3 defendant to do business with him, something at least some class members likely
4 would prefer not to do. *E.g.*, *Synfuel Technologies, Inc. v. DHL Express, Inc.*, 463
5 F.3d 646, 654 (7th Cir. 2006).

6 Moreover, the coupons that class members may receive from this settlement
7 exhibit another notable defect, namely the fact that a significant part of the value
8 will likely never reach the class. The proposed settlements offer coupons of a
9 questionable value, even in the diluted world of coupon settlements, because of
10 the need for a class member to purchase an airline ticket with Korean Air or
11 Asiana Airlines in order to receive any benefit.

12 The proposed coupons do not offer discounts for goods like car
13 maintenance or breakfast cereals that a typical class member might buy regularly.
14 To get any value from the coupon at all, most class members will have to either
15 purchase an expensive airline ticket or attempt to sell their coupon in a secondary
16 market. Therefore, any calculation of coupon value must be adjusted steeply
17 downwards, because no buyer will pay $100 for a coupon that supplies a $100
18 discount. Common sense suggests that a large number of class members will
19 likely discard the coupon in disgust after realizing that going to the trouble of
20 selling the coupon is just not worth it. In short, a representation that the coupons
21 provide value to the class anything like the value they offer on paper cannot, so to
22 speak, be taken at face value: by and large, the class will get no value from the
23 coupons at all unless they expend time and resources to sell them at a substantial
24 discount.

25

This objection does not argue that a settlement can never contain coupons, but *Churchill Village, LLC v. General Electric Co.*, 361 F.3d 566, 575 (9th Cir. 2004), requires a court to consider the amount offered in settlement in considering its fairness. When determining whether this settlement is fair or adequate, this Court should recognize the several respects in which these coupons benefit Defendants as well as the fact that these coupons are not worth anywhere near their face value to the class.

**IV.     Class Counsel's Fee Request Is Excessive.**

    **A.     Compensation Should Be Based on What the Class Actually Receives, Not What Is Paid to Third Parties.**

The settlement fund includes money that is going to third parties, and not the class. *See, e.g.*, Korean Air Stipulation of Settlement, ¶ 32. As a result, class counsel will receive a disproportionate share of the settlement relative to what the actually class receives. The 25% should not be calculated on the gross settlement fund, but rather on the *common fund*, which is what the class receives.

Class counsel request 25% of the settlement fund under a common fund theory, but the settlement fund includes moneys that are not part of the common fund going to the class, but rather will be used to pay for notice and administration. As a result, class counsel's attorney-fee request includes a 25% commission on the amount being paid for notice. This is wrong. First, as a matter of law, post-settlement notice is carried out almost exclusively for the benefit of *defendants*, rather than the class, and thus cannot be double-counted as a class benefit; second, the theory that notice should be counted as a class benefit for purposes of evaluating the settlement would lead to absurd results that contradict the Class Action Fairness Act.

The consideration that defendants receive for settling a class action is a waiver of all claims by class members. But if an individual class member later claims he did not receive adequate notice and therefore should not be bound by the settlement, he can litigate that issue on an individual basis when the settlement is raised as a bar to a lawsuit he has brought. *Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1375 (9th Cir. 1993). Defendants therefore have every incentive to ensure that class-wide notice meets constitutional requirements. This is far from a hypothetical concern: defendants have found themselves on the end of repeat litigation when class members failed to receive constitutionally-adequate notice. *See, e.g., Besinga v. United States*, 923 F.2d 133, 137 (9th Cir. 1991) (reversing dismissal of plaintiff's case because no notice was given in prior class action). Notice benefits the defendants by creating claim preclusion that would not otherwise exist. As such, the expense of class notice cannot simply be counted as a benefit on the class's side of the ledger.

As part of its request for 25% of the Settlement Amount, class counsel in effect demand 25% of the court-approved fees and expenses of the claims administrator, as well as 25% of the administrative and maintenance fees associated with the settlement fund. The money going to the claims administrator is money going to a third party, rather than the class, and should not be considered part of the common fund for purposes of calculating the fee award. Any other result is the economic equivalent of a kickback where class counsel gets money based on how much the settlement administrator bills.

Worse, such an arrangement creates a conflict of interest between the attorney and the class. Under the current structure, every dollar the settlement administrator receives is a dollar the class will not receive. If attorney fees are

paid only on what the class receives, class counsel will be appropriately incentivized to ensure that settlement administration is efficient and to take steps to prevent overbilling or wasteful expenditures. But if class counsel is given a commission based on the size of administrative expenses, class counsel will be indifferent to the efforts of the administrator, creating a perverse incentive structure that discourages assignment of resources to the class. *Cf. Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 121 (2d Cir. 2005).

Class counsel may legitimately request a percentage of what the class receives, but should not be rewarded for the amounts paid to the post office and the settlement administrator. In short, class counsel is entitled to a share of the net settlement amount: the money the class *actually* receives. The key consideration in determining a fee award is reasonableness in light of the benefit *actually conferred*. *In re HP Inkjet Printer Litig.*, 2011 WL 1158635, at *10 (N.D. Cal. Mar. 29, 2011) (quoting *Create-A-Card Inc., v. Intuit, Inc.*, 2009 WL 3073920, at * 3 (N.D. Cal. Sept. 22, 2009)).

### B. Class Counsel's Fee Request Based on the Coupon Settlement Cannot Pass the Test of 28 U.S.C. § 1712.

If class counsel agreed to accept excessive fees and costs to the detriment of class plaintiffs, then class counsel breached their fiduciary duty to the class. *Lobatz v. U.S. West Cellular of Cal., Inc.,* 222 F.3d 1142, 1147 (9th Cir. 2000). Because part of this settlement is a coupon settlement without any accompanying injunctive relief, the attorneys' fee request from this portion should be based on the value to class members of the coupons that are redeemed rather than the theoretical value of the coupons available for redemption. 28 U.S.C. § 1712(a). The inequity of settlements in which counsel are awarded large fees, while leaving

class members with coupons or other awards of little or no value was a central legislative motivation of the Class Action Fairness Act.

Class counsel's lodestar amount is particularly inappropriate where, as here, the benefit achieved for the class is small and the lodestar award large. *True*, 2010 WL 707338 (citing *Create-A-Card, Inc. v. Intuit, Inc.*, 2009 WL 3073920 (N.D. Cal. Sept. 22, 2009)). Thus, class counsel's attempt to support their fee request with a large loadstar figure is irrelevant. Attorneys' fees should be based on a percentage of the recovery. The contingent fee uses private incentives rather than careful monitoring to align the interests of lawyer and client. The lawyer gains only to the extent his client gains. "This interest-alignment device is not perfect. . . . But [an] imperfect alignment of interests is better than a conflict of interests, which hourly fees may create." *Kirchoff v. Flynn*, 786 F.2d 320, 325 (7th Cir. 1986); *see generally* Charles Silver, *Due Process And The Lodestar Method: You Can't Get There From Here*, 74 TULANE L. REV. 1809 (2000) (citing authorities that show a broad consensus that percentage-based formulas harmonize the interests of agents and principals better than time-based formulas like the lodestar approach). Both public policy and the clear language of § 1712(a) require fees to be based on actual class recovery.

With respect to the settlements here, one can derive the total value of the settlement fund by adding the value that the coupons actually provide to the class to the cash that attorneys and named plaintiffs will receive. The sum of those benefits and that cash should be treated as a settlement fund for the benefit of the class, with the agreed-on fee amount constituting the upper limit on the fees that can be awarded to counsel. *See* Manual for Complex Litigation § 21.71 (4th ed.

2008). The attorneys' fees may be compared to this total fund to determine whether the allocation between attorneys and the class is reasonable. *See id.*

Rather than take this approach, class counsel request 25% of the $50 million in settlement cash and separately 25% of the $36 million in settlement coupons. The fees derived from the coupon settlement, however, should be based on the value to class members of the coupons that are **redeemed** rather than the theoretical value of the coupons that are merely available for redemption. *See* 28 U.S.C. §1712(a). This is true because the key consideration in determining a fee award is reasonableness in light of the benefit *actually conferred*. *In re HP Inkjet Printer Litig.*, 2011 WL 1158635, at *10; *see also General Motors*, 55 F.3d at 820-21 (considering automotive coupons and separate attorneys' fees as a common fund in economic reality).

Where, as here, a settlement produces *both* coupon relief and non-coupon relief, 28 U.S.C. § 1712(c) controls, which requires that the portion of the fee award that is based upon the recovery of the coupons must be calculated in accordance with § 1712(a), while the fee not based upon coupons be calculated in accordance with § 1712(b). In sum, calculation of attorney fees deriving from coupons must be controlled by the value that their redemption brings the class. This measure is mandatory, not optional. Any attempt by class counsel to obtain 25% of the total coupon value must be rejected.

**V.  The Settlement Is Unfair As The Likelihood Of Unclaimed Funds Will Result In The Establishment Of A *Cy Pres* Fund That Is Unnecessary And Does Not Benefit The Class.**

For reasons that are not disclosed to the Court, class counsel want to see any residual funds diverted to *cy pres* relief. The only reason funds would be left

1  over is if the parties contemplate that many class members will not recover any
2  payments particularly those class members who receive coupon benefits.

3  Residual *cy pres* distribution provides benefit to non-class members for
4  issues unrelated to this litigation, and therefore this Court should prohibit such
5  distribution under any circumstances. According to the parties, any residual *cy*
6  *pres* distribution shall be to benefit charitable organizations. *See* Korean Air
7  Stipulation of Settlement, ¶ 27(c).

8  What the parties are really saying here is that residual funds will be
9  distributed to whatever organizations that class counsel may designate. Under the
10 Pocket Guide, this payment benefits Defendants only and no one else. According
11 to the Pocket Guide, "Cy pres relief must come as close as possible to the
12 objective of the case and the interests of the class members. Question whether the
13 class members might feasibly obtain a personal benefit." *See* Barbara J. Rothstein
14 & Thomas E. Willging, *Managing Class Action Litigation: A Pocket Guide for*
15 *Judges*, p. 19 (3d. 2010).

16 Authorizing the distribution of residual funds to unnamed charitable
17 organizations does not come as close as possible to the objectives of this anti-trust
18 class action. Class counsel seem to have forgotten that "*cy pres*" means "as near
19 as possible" to the original purpose. *Id.* The purpose of the litigation was never to
20 donate to unnamed charitable organizations. Therefore, this Court should reject
21 the proposed settlement because the *cy pres* component is not only unnecessary,
22 but unrelated to the purposes underlying the litigation.

23 **VI. Conclusion.**

24 For the reasons stated above, Said Nedlouf, individually and as Executor of
25 the Estate of Mary Kathryn Bizjak, requests that these objections be sustained,

1  that Plaintiffs' Motion for Final Approval of Settlement be denied, that Plaintiffs'
2  Motion for an Award of Attorneys' Fees and Reimbursement of Expenses be
3  denied, and that an order be entered setting the deadlines to conduct discovery on
4  the Motion and for all other relief which is fair, just, and equitable.
5      DATED this 23rd day of October, 2013.

Respectfully submitted,

BY:  /s/ *Brian C. Shapiro*
    Brian C. Shapiro
      California State Bar No. 192789

Law Offices of Lawrence D. Rohlfing
12631 East Imperial Highway
Suite 115 C
Santa Fe Springs, CA 90670
(562) 868-5886
(562) 868-5491 (fax)


Chester H. Arter, III*
  Georgia State Bar No. 021765

Law Office of Chester H. Arter, P.C.
11175 Cicero Drive
Suite 100
Alpharetta, GA 30022
(770) 663-1338
(770) 456-5262 (fax)
chet@arterlaw.com

(* application for *Pro Hac Vice* forthcoming)

**CERTIFICATE OF SERVICE**

I hereby certify that on October 23, 2013, I presented the foregoing to the Clerk of Court for filing and uploading to the CM/ECF system and served a copy of the same via U.S. Mail, postage prepaid, upon the counsel of record and settlement administrator listed below:

Susan G. Kupfer
Glancy Binkow & Goldberg LLP
One Embarcadero Center, Suite 760
San Francisco, CA 94111

Jeff S. Westerman
Westerman Law Group
1925 Century Park East, Suite 2100
Los Angeles, CA 90067

Marc M. Seltzer
Susman Godfrey LLP
1901 Avenue Of The Stars, Suite 950
Los Angeles, CA 90067

*Counsel for the Class*

Donald L. Morrow
Panteha Abdollahi
Paul Hastings LLP
695 Town Center Dr., 17th Floor
Costa Mesa, CA 92626

*Counsel for Defendant Korean Air*

Korean Air Passenger Antitrust Litigation
P.O. Box 2436
Faribault, MN 55021

*Settlement Administrator*

DATED this 23rd day of October, 2013.

/s/ Brian C. Shapiro
Brian C. Shapiro