Joseph Darrell Palmer (SBN 125147)
Email: darrell.palmer@palmerlegalteam.com
Law Offices of Darrell Palmer
2244 Faraday Avenue, Suite 121
Carlsbad, CA 92008
Telephone: (858) 215-4064
Facsimile: (866) 583-8115

Attorney for Objector Stuart Johnson

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA - WESTERN DIVISION**

| | |
|---|---|
| IN RE KOREAN AIR LINES CO., LTD. ANTITRUST LITIGATION | MDL: 07-1891 |
| | Case No. 07-cv-05107-SJO (AGRx) |
| This Document Relates To: | **OBJECTIONS TO PROPOSED SETTLEMENT AND NOTICE OF INTENT TO APPEAR** |
| ALL ACTIONS. | |
| Defendant. | Judge: Hon. S. James Otero |

## I. CLASS MEMBERSHIP

Objector Stuart Johnson resides at Villa 3, Dist 9C, Jumeirah Village Triangle Dubai, UAE; he can be reached through his attorney. Mr. Johnson purchased air travel from Korean Airlines in the US for travel to and from the US and Korea in December 2002 and January 2004. Objector intends to appear at the fairness hearing through counsel. If any witness testifies at the hearing to support the proposed settlement, Objector's counsel requests permission to cross-examine the witness.

## II. THE COURT HAS A FIDUCIARY DUTY TO THE CLASS

A district court must act as a "fiduciary for the class," "with 'a jealous regard' " for the rights and interests of absent class members. *In re Mercury Interactive Corp*., 618 F.3d 988, 994-95 (9th Cir. 2010) (quoting *In re Washington Pub. Power Supply Sys. Lit.*, 19 F.3d 1291, 1302 (9th Cir. 1994)). "Because class actions are rife with potential conflicts of interest between class counsel and class members, district judges presiding over such actions are expected to give careful scrutiny to the terms of proposed settlements in order to make sure that class counsel are behaving as honest fiduciaries for the class as a whole." *Mirfasihi v. Fleet Mortgage Corp.*, 356 F.3d 781, 785 (7th Cir. 2004). "Both the class representative and the courts have a duty to protect the interests of absent class members." *Silber v. Mabon*, 957 F.2d 697, 701 (9th Cir. 1992). *See also Diaz v. Trust Territory of Pacific Islands*, 876 F.2d 1401, 1408 (9th Cir. 1989) ("The district court must ensure that the representative plaintiff fulfills his fiduciary duty toward the absent class members").

"Under Rule 23(e) the district court acts as a fiduciary who must serve as a guardian of the rights of absent class members.... [T]he court cannot accept a settlement that the proponents have not fair, reasonable and adequate." *In re General Motors Corp. Pick-Up Truck Fuel Tank Prod. Liab. Litig.*, 55 F. 3d 768, 785 (3d. Cir. 1995) (quoting *Grunin v. International House of Pancakes*, 513 F.2d 114, 123 (8th Cir. 1975)). *See also Riker v. Gibbons*, 2010 WL 4366012, at *2 (D. Nev. Oct. 28, 2010).

There should be no presumption in favor of settlement approval: "[t]he proponents of a settlement bear the burden of proving its fairness." *True v. American Honda Co.*, 749 F. Supp. 1052, 1080 (C.D. Cal. 2010) (*citing* 4 NEWBERG ON CLASS ACTIONS § 11:42 (4th ed. 2009)). *Accord* AMERICAN LAW INSTITUTE, PRINCIPLES OF THE LAW OF AGGREGATE LITIG. § 3.05(c) (2010) ("*ALI Principles*"). "These concerns warrant special attention when the record suggests that settlement is driven by fees; that is, when counsel receive a disproportionate distribution of the settlement." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1021 (9th Cir. 1998); *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 947 (9th Cir. 2011). This is a fee-driven settlement: class counsel has yet to move for final approval and their (inadequate) fee application is not even on the settlement website.

It is insufficient that the settlement was at "arm's length" without express collusion between the settling parties; because of the danger of conflicts of interest, third parties must monitor the reasonableness of the settlement as well. "If fees are unreasonably high, the likelihood is that the defendant obtained an economically beneficial concession with regard to the merits provisions, in the form of lower monetary payments to class members or less injunctive relief for the class than could otherwise have obtained." *Staton v. Boeing Co.*, 327 F.3d 938, 964 (9th Cir. 2003).

**III. SETTLEMENT-ONLY CLASS REQUIRES HEIGHTENED SCRUTINY**

Class counsel here is seeking to certify a class for settlement purposes only. This results in a "settlement only class." Several Circuits have held that in these situations, heightened scrutiny is required. *See In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Products Liab. Litig.*, 55 F.3d 768, 805 (3d Cir. 1995); *Mars Steel Corp. v. Continental Ill. Nat'l Bank & Trust Co.*, 834 F.2d 677, 681 (7th Cir. 1987); *Weinberger v. Kendrick*, 698 F.2d 61, 73 (2d. Cir. 1982) This circuit has done the same. *See, e.g.*, *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026-27 (9th Cir. 1998) The court must exercise this heightened scrutiny because prior to certification, "there is an even greater potential for breach of fiduciary duty owed the class during settlement." *In re Bluetooth Headset Prod. Liab. Litig.*, 654 F.3d 935, 946 (9th Cir. 2011).

**IV. CLASS NOTICE IS DEFICIENT**

The class notice provided to class members here is insufficient, as it fails to inform class members of how much they will receive if the settlement is approved. Without this information, the class members cannot properly weigh the options they have. These notices only state that the class members will receive payment based upon the average fare by seat class for a year multiplied by the number of seats the class members purchased. *See* Claim Form, p. 1. The notice and claim forms also fail to include any consideration of improving reception and participation by the US Korean community.

## V. THE COURT SHOULD CLOSELY EXAMINE THE RATIONALE FOR ANY COUPONS AND REJECT THEM

The coupon component is a scheme to inflate attorney fees. The class would be much better off with $5 million more in cash and no coupons. The court must demand real evidence to support the coupon component. Historically redemption rates are hideously low. Why is this plan different? Is this a marketing ploy by defendants or a fee inflation scheme? There must be facts to support sending coupons to the class. It will create as much administrative expense as value to the class. It's hard enough to entice class members to submit claims for cash. Here we have a class period beginning 14 years ago and ending six years ago. There is no reason to assume a class member that flew to Korea in 2002 has any need or desire to do so in 2016. Several factors will negatively affect the redemption of the coupons here. The coupons expire three years after issuance and can only be used on the Defendant airlines. "Because redemption rates have a direct and potentially devastating impact on the actual value received by the class, such lack of evidence prevents any reasoned assessment of the settlement's actual value to the class." *Sobel v. Hertz Corp.*, No. 3:06-cv-00545-LRH-RAM, 2011 U.S. Dist. LEXIS 68984 at *36 (D. Nev. Jun. 27, 2011); *Synfuel*, 463 F.3d at 653-54 (requiring the assessment). Assuming a generous 10% redemption rate of the maximum $26,000,000 in coupons, the amount redeemed would be only $2,600,000. There is plenty of data to support expert

opinions on the redemption rate, yet none were offered. Absent some financial data or at least expert opinions based on real facts this scheme is suspect and should be rejected.

## VI. ATTORNEYS' FEES MUST BE BASED ON REDEEMED COUPONS

Low value settlements where "counsel are awarded large fees, while leaving class members with coupons or other awards of little or no value" were a central legislative motivation of the Class Action Fairness Act (CAFA). 28 U.S.C. § 1711 note § 2(a)(3)(A). Coupon settlements are disfavored because they often fail to disgorge illegal profits and instead force future business with the defendant. *Synfuel Technologies v. DHL Express (USA)*, 463 F.3d 646, 654 (7th Cir. 2006). Because of these inherent dangers, CAFA requires the district court to apply "heightened judicial scrutiny," *id. at 654*, and to limit the attorney fee award based "on the value to class members of the coupons that are redeemed," 28 U.S.C. 1712(a); *cf. In re Baby Prods. Antitrust Litig.*, 708 F.3d 163, 179 n.13 (3d Cir. 2013) (citing § 1712).

The Ninth Circuit held that Section 1712(a) of CAFA is mandatory in calculating fee awards in coupon cases, stating, "If the district court awards 'any' attorney's fees, and those attorney's fees are 'attributable to the award of coupons, then the fees award must be calculated in the manner prescribed by § 1712(a) (i.e., using the redemption value of the coupon)." *In re HP Inkjet Printer Litigation*, 716 F.3d 1173, 1181 (9th Cir. 2013).

If the court approves the coupon distribution, class counsel must accept coupons relative to the redeemed coupons as their fee. Having them flood the market with their

coupons would be detrimental to class members trying to do their coupons. Class counsel should be restricted regarding resale of the coupons.

## VI. CLASS COUNSEL'S FEE REQUEST IS EXCESSIVE

### A. Payments Made To Third Parties Should Not Be Part Of Fee Calculations

The attorney fees should be based on the common fund distributed to class members, they should receive no portion of the administrative, notice or other expenses. *See, e.g.*, Korean Air Stipulation of Settlement, § 32. Without this exclusion, there will be no incentive control overbilling or waste by the administrator.

### B. Class Counsel's Lodestar Is Unsupported and Suspect

The lodestar is completely unsupported. Less than three pages of information has submitted to the court and class. (Doc 625-1,2,3,4) They give us the name, billing rate and number of hours billed to the case. We do not understand what the very expensive lawyers and paralegals did during those hours. Class counsel must submit their detailed billing records for review by the court and class. Nothing less will do. We don't know how many depositions and how many class counsel attended; how many strategy meetings with how many attendees. How many people attended the mediation? How many times was each motion and complaint reviewed? Once approved the settlement fund becomes the property of the class. The class then pays their lawyers but before they write that check, the client has the right to see exactly what they are paying for. The motion for attorney fees and supporting declarations are conspicuously absent from the

settlement website. The only "final approval" documents available to the class on the website are filings from 2011. Class counsel are hiding these proceedings and their billing records from the class. Their disregard for informing their own clients demonstrates the fee driven conflict and their cultural prejudice and insensitivity towards their own clients is likewise demonstrates conflict and communication problems.

### C. Less Work Was Required Of Class Counsel In This Case

In this Circuit, two of the factors used to determine attorneys' fees awards are the complexity of the case and the skill required and quality of work performed by counsel. *See Six (6) Mexican Workers v. Arizona Citrus Growers*, 904 F.2d 1301; *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043. This action arose out of a criminal conviction for price fixing. Class counsel should not be paid a premium for leveraging the work of the US Attorney.[1] Class counsel has not explained why 25% is appropriate because it isn't. Fees should not exceed 15%.

## VII. THE *CY PRES* PROVISION MUST BE DEFINED, PUBLICIZED AND PAINSTAKINGLY MATCHED TO THE CLASS.

Unredeemed coupons will be diverted to unknown *cy pres* recipients. Stipulation of Settlement § 27(c). These recipients must be identified and approved by the court.

---

[1] If there is any undistributed cash residual that should be directed to *cy pres* this objector nominates the US Attorney's office as the recipient.

The court must make factual findings regarding the indirect benefits to this class of airline passengers.

The legal construct of *cy pres* (from the French "*cy pres comme possible*"—"as near as possible") has its origins in trust law as a vehicle to realize the intent of a settlor whose trust cannot be implemented according to its literal terms. *In re Airline Ticket Comm'n Antitrust Litig*., 268 F.3d 619, 625 (8th Cir. 2001). In the class action context, courts require that "unclaimed funds should be distributed for a purpose as near as possible to the legitimate objectives underlying the lawsuit, the interests of class members, and the interests of those similarly situated." *Id*. at 682; *Dennis v. Kellogg Co*., 697 F.3d 858, 866 (9th Cir. 2012) (reversing where *cy pres* beneficiary had "little or nothing to do with the purposes of the underlying lawsuit or the class of plaintiffs involved"[2]); *Baby Prods*., 708 F.3d at 169 (under certain circumstances "courts have permitted the parties to distribute to a nonparty (or nonparties) the excess settlement funds for their next best use—a charitable purpose reasonably approximating the interests pursued by the class."); *Klier*, 658 F.3d at 476 ("[T]he court's discretion remains tethered to the interest of the class, the entity that generated the funds."); *Masters*, 473 F.3d at 436 ("[T]he purpose of [c]y [p]res distribution is to put the unclaimed fund to its *next best* compensation use.") (emphasis in original).

---

[2] Objector's Counsel was lead appellate counsel in *Dennis v. Kelloggs.*

The *cy pres* distribution is just as important as notice or any other Rule 23 component. It is not an afterthought or avoidable contingency. There will be unused coupons and court must plan for that inevitable event now with full disclosure. The final approval hearing should be continued until class counsel (not defendants) serves their clients by thoughtfully nominating *cy pres* recipients otherwise this settlement is doomed.

**X. THE COURT SHOULD NOT INFER ACCEPTANCE BY A LOW NUMBER OF OBJECTIONS**

Any class action settlement, no matter how much it betrays the interests of the class, will produce only a small percentage of objectors. The predominating response will always be apathy because objectors without counsel must expend significant resources on an enterprise that will create little direct benefit for themselves. *See Vought*, 2012 U.S. Dist. LEXIS 143595, at *60 (citing, *inter alia*, a 1996 FJC survey that found between 42% and 64% of settlements engendered no filings by objectors). Silence is *not* consent. *GMC Engine Interchange*, 594 F.2d at 1137 ("Acquiescence to a bad deal is something quite different than affirmative support."). "[S]ilence is a rational response to any proposed settlement even if that settlement is inadequate." Christopher R. Leslie, *The Significance of Silence: Collective Action Problems and Class Action Settlements*, 59 Fla. L. Rev. 71, 73 (2007). Especially when no information is available.

Without *pro bono* counsel to look out for the interests of the class, filing an objection is economically irrational for any individual. The Court should draw no

inference in favor of the settlement from the number of objections, especially given the vociferousness of the objectors. *Vought*, 2012 U.S. Dist. LEXIS 143595, at *60-*61.

## XI. NOTICE OF JOINDER IN OTHER OBJECTIONS

This Objector joins in and adopts as though fully stated here all other meritorious bona fide objections including Docs 635 and 639.

## CONCLUSION

WHEREFORE, this Objector respectfully requests this Court:

A. Upon proper hearing, sustain these objections;

B. Upon proper hearing, enter such Orders as are necessary and just to adjudicate these objections and to alleviate the inherent unfairness, inadequacies and unreasonableness of the proposed settlement.

C. Allow discovery on attorney fees.

Dated: October 25, 2013 By: /s/ Joseph Darrell Palmer
Joseph Darrell Palmer
Attorney for Objector Stuart Johnson

## CERTIFICATE OF SERVICE

I certify on October 25, 2013, I electronically filed the foregoing with the Clerk of the Court of the United States District Court for the Central District of California by using the USDC CM/ECF system. I certify all participants registered CM/ECF users that service will be accomplished by the USDC CM/ECF system. I also mailed a copy to the Claims Administrator as directed by the Notice.

___/s/ Joseph Darrell Palmer____