JEFF S. WESTERMAN (94559)
jwesterman@jswlegal.com
WESTERMAN LAW CORP.
1925 Century Park East, Suite 2100
Los Angeles, CA 90067
Tel: (310) 698-7450
Fax: (310) 201-9160

SUSAN G. KUPFER (141724)
skupfer@glancylaw.com
GLANCY BINKOW & GOLDBERG LLP
One Embarcadero Center, Suite 760
San Francisco, CA 94111
Tel: (415) 972-8160
Fax: (415) 972-8166

MARC M. SELTZER (54534)
mseltzer@susmangodfrey.com
SUSMAN GODFREY L.L.P.
1901 Avenue of the Stars, Suite 950
Los Angeles, CA 90067
Tel: (310) 789-3100
Fax: (310) 789-3150

Plaintiffs' Settlement Class Counsel

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### WESTERN DIVISION

| | |
|---|---|
| In re KOREAN AIR LINES CO., LTD. ANTITRUST LITIGATION | MDL NO. 1891 |
| | Master File No. CV 07-05107 SJO (AGRx) |
| This Document Relates To: | |
| All Actions | **MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION FOR IMPOSITION OF APPEAL BONDS PURSUANT TO RULE 7 OF THE FEDERAL RULES OF APPELLATE PROCEDURE AND FOR AN ORDER ALLOWING DISCOVERY OF OBJECTORS** |
| | Date: July 28, 2014 |
| | Time: 10:00 a.m. |
| | Place: Courtroom of the Hon. S. James Otero |

# **TABLE OF CONTENTS**

I.   INTRODUCTION ...........................................................................1

II.  BACKGROUND  ............................................................................3

    A.   The Litigation..........................................................................3

    B.   The Settlement Agreement and Attorneys' Fees ..................4

        1.   Terms of the Settlement Agreement..........................4

        2.   Class Notice Process..................................................4

        3.   Attorneys' Fees .........................................................5

    C.   The Objections ........................................................................5

        1.   The Johnson Objection Was Filed by a Discredited Serial Objector .................................................................5

        2.   The Nedlouf Objection Was Filed by a Close Relative Who Swore Under Oath That Nedlouf's Objection Was Motivated By Spite Towards Korean Air.................................7

        3.   This Court Found that Both Objectors Lacked Standing and Issued an Order to Show Cause .........................8

        4.   The Objectors' Failed to Meet Their Burden to Show They Were Class Members, They Failed to Appear at the Final Settlement Hearing, and They Never Rebutted Plaintiffs' Arguments Against Their Substantive Objections or Their Lack of Standing .......................................9

    D.   Final Settlement Approval and Award of Attorneys' Fees ...............10

    E.   Costs Resulting from Objectors' Appeals .........................................11

III. ARGUMENT  ................................................................................11

    A.   Requiring an Appeal Bond is Appropriate .......................................11

    B.   All of the Factors that the Ninth Circuit Requires this Court to Consider Support the Imposition of a Bond .....................................13

1       1.    The burden is on the Objectors to prove they are unable to
2             post a bond, and there is no evidence that Objectors are
3             unable to do so. ..........................................................................15
4       2.    There is a substantial risk, particularly with out-of-state
5             objectors, that Objectors will not pay the costs if their
6             appeals are unsuccessful. ..........................................................16
7       3.    There is a substantial likelihood that Objectors will lose
8             their appeals and be subject to costs. .......................................17
9    C.  Plaintiffs Seek Discovery of the Appealing Objectors .....................18
10  IV.  CONCLUSION  ........................................................................................20

1

## TABLE OF AUTHORITIES

**Cases**

*Azizian v. Federated Dep't Stores, Inc.*,
   499 F.3d 950 (9th Cir. 2007) ...................................................................12

*Dennings v. Clearwire Corp.*,
   928 F. Supp. 2d 1270 (W.D. Wash. 2013) ...........................................11, 12, 18

*Embry v. ACER America Corp.*,
   2012 WL 2055030 (N.D. Cal. June 5, 2012).........................................15, 16, 17

*Figure Eight Holdings, LLC v. Dr. Jays, Inc.*,
   534 F. App'x 670 (9th Cir. 2013).........................................................15

*Fleury v. Richemont North America, Inc.*,
   Case No. 05-C-4525 EMC, 2008 WL 4680033
   (N.D. Cal. Oct. 21, 2008).................................................................15, 18

*Gemelas v. Dannon Co., Inc.*,
   Case No. 08-CV-236, 2010 WL 3703811 (N.D. Ohio Aug. 31, 2010).............16

*Glanzman v. Uniroyal, Inc.*,
   892 F.2d 58 (9th Cir. 1989) ...............................................................18

*Hanlon v. Chrysler Corp.*,
   150 F.3d 1011 (9th Cir. 1998) ............................................................17

*In re Broadcom Corp. Secs. Litig.*,
   Case No. 01-SACV-275 DT (MLGx), 2005 U.S. Dist. LEXIS 45656
   (C.D. Cal. Dec. 5, 2005)...................................................................12

*In re Cathode Ray Tube Antitrust Litig.*,
   281 F.R.D. 531 (N.D.Cal. 2012) ..........................................................20

*In re Countrywide Fin. Corp. Customer Data Sec. Breach Litig.*,
   Case No. 3:08-MD-01998, 2010 WL 5147222 (W.D. Ky. Dec. 13, 2010) .......14

*In re Law Office of Jonathan E. Fortman, LLC,*,
   2013 U.S. Dist. LEXIS 13903 (E.D. Mo. Feb. 1, 2013) ..........................8

*In re Magsafe Apple Power Adapter Litig.*,
   Case No. 12-15757, 2014 WL 1624493 (9th Cir. Apr. 24, 2014).....................15

*In re Netflix Privacy Litig.*,
   2013 WL 6173772, (N.D. Cal. Nov. 25, 2013) ................................12, 13, 15, 19

*In re Oil Spill, No. MDL 2179 Section J,*,
   2013 U.S. Dist. LEXIS 4595 (E.D. La. Jan. 11, 2013) ...................................2, 5

*In re Toyota Motor Corp.*,
   2013 WL 5775118 (C.D. Cal. Oct. 21, 2013) ........................................14

*In re Uponor*,
   2012 WL 3984542 (D. Minn. Sept. 11, 2012).......................................6

*In Re Wal-Mart Wage & Hour Empl. Practices Litig.*,
  Case No. 06-CV-00225 PMP-PAL, MDL 1735, 2010 U.S. Dist. LEXIS 21466
  (D. Nev. Mar. 8, 2010) ........................................................................................13

*Miletak v. Allstate Ins. Co.*,
  Case No. 06-C-03778 JW, 2012 WL 3686785
  (N.D. Cal. Aug. 27, 2012) ..........................................................................12, 15, 17

*Nalder v. United Auto. Ins.*,
  Case No. 2:09-CV-1348-ECR-GWF, 2011 WL 4905717
  (D. Nev. Oct. 14, 2011) ......................................................................................13

*Schulken v. Washington Mut. Bank*,
  Case No. 09-CV-02708 LHK, 2013 WL 1345716
  (N.D. Cal. Apr. 2, 2013) ..........................................................................14, 15, 16

*TFT-LCD (Flat Panel) Antitrust Litig.*,
  2013 U.S. Dist. LEXIS 34845 (N.D. Cal. Mar. 12, 2013) ...................................6

*Torrisi v. Tuscan Elec. Power Co.*,
  8 F.3d 1370 (9th Cir. 1993) ...............................................................................18

Statutes

28 U.S.C. § 1920(6) .............................................................................. 13, 14

**Rules**
Fed. R. App. P. 7 ........................................................................................passim

Fed. R. App. P. 39 .....................................................................................12, 14, 15

Fed. R. Civ. P. 23(e)(5) ...............................................................................9

Plaintiffs, by Plaintiffs' Settlement Class Counsel, respectfully request that, pursuant to Rule 7 of the Federal Rules of Appellate Procedure, this Court impose appeal bonds in an amount of at least $290,000 on Stuart Johnson and Said Nedlouf, (collectively "Objectors") who have appealed the Court's final judgment approving the settlement with defendant Korean Air Lines, Ltd. ("Korean Air"). These bonds are appropriate under Ninth Circuit law because there is a substantial likelihood that the Objectors will lose their appeals and be subject to costs. If so, their appeals will have served no purpose other than to delay the distribution of the settlement to members of the Class. Plaintiffs also respectfully request an order allowing limited discovery of the Objectors to verify basic information concerning their ability to post a bond and their objections and appeals.

I.    **INTRODUCTION**

This litigation commenced in August 2007, and has been, as this Court characterized it, a "complex, lengthy, and hard-fought" case. (Doc. 684 at 1.) After several years of litigation and months of arm's-length negotiations and mediation, the plaintiffs and defendant Korean Air agreed to a settlement that provides $39 million in cash and $26 million in coupons to the Class. (Doc. 596-2.) (settlement agreement.) This Court approved the settlement agreement and an award of attorneys' fees on December 23, 2013. (Docs. 694, 695.) Prior to the Korean Air settlement agreement, this Court approved a settlement between plaintiffs and defendant Asiana Airlines, Inc. ("Asiana") that provides an additional $11 million in cash and $10 million in coupons to the Class. (Doc. 505) (order approving settlement) (Doc. 422-2) (Asiana settlement agreement).

Despite the remarkable recovery obtained for the benefit of the Class, the Objectors seek to hold up the settlement and appeal this Court's final judgment approving the settlement with Korean Air and the orders striking their objections,

and granting attorneys' fees and costs.[1] Without exception, the objections filed by these Objectors were rejected by the Court. Indeed, at the December 2, 2013 final approval hearing, the Court exhaustively considered the fairness of the settlement and rejected all of the objections made to the settlement and fees and cost application and found them to be without merit.  (Doc. 679) (Ex. C) (transcript of final approval hearing).[2]  Furthermore,  the  Court  provided  the  Objectors  with  numerous opportunities to show that they were members of the Class with standing to object. Despite repeated chances to do so, none of the Objectors met their burden of showing they had standing. This Court extensively evaluated their submissions and concluded that they lacked standing, and that, in any event, their claims failed on the merits. (Doc. 684.)  In approving both the settlement and the award of attorneys' fees, the Court again concluded that the substantive objections were meritless and that the Objectors lacked standing to assert them.

One of the two Objectors is represented by an attorney who has objected to class action settlements, taken appeals from the orders overruling his objections and then attempted to extract payment from the fees of class counsel in return for dismissing those appeals. *See In re Oil Spill*, No. MDL 2179 Section J, 2013 U.S. Dist. LEXIS 4595, at *154 n.40 (E.D. La. Jan. 11, 2013) (noting that Mr. Joseph Darrell Palmer, Objector Johnson's counsel, "has been deemed a 'serial objector' by several courts").

Despite their clear lack of merit, their appeals of this Court's orders overruling the objections will delay the distribution of settlement proceeds to the more than

---

[1] The Objectors have each appealed three orders of this Court: (1) Amended Final Judgment and Order of Dismissal With Prejudice as to Defendant Korean Air Lines Co., Ltd., (Doc. 694); (2) Order Granting Plaintiffs' Motion for an Award of Attorneys' Fees and Reimbursement of Expenses, (Doc. 695); and (3) Order Striking Objections for Failure to Show Class Membership (Doc. 684).

[2] References to "Ex.__" are to the exhibits attached to the Declaration of Jeff S. Westerman, filed concurrently herewith.

90,000 members of the Class who have filed claims. To ensure that these Objectors are able to pay costs when they lose their appeals, the Court should require each Objector to post an appeal bond in the amount of at least $290,000. As set forth below, these amounts are appropriate under the Federal Rules of Appellate Procedure and Ninth Circuit case law based on the likelihood that the Objectors' appeals will fail and the risk that they will avoid paying costs.

II.   **BACKGROUND**

    A.    **The Litigation**

The litigation commenced in August 2007. The parties engaged in substantial motion practice and litigated several important issues. Korean Air and Asiana each filed initial motions to dismiss. (Docs. 99, 102.) After extensive briefing, on June 25, 2008, this Court granted these motions in part thereby excluding the claims of airline passengers with so-called "pass through claims," whose air travel did not originate in the U.S. or Korea and terminate in the other. (Doc. 155.)

On October 9, 2010, after extensive arm's-length negotiations, Plaintiffs filed a motion for preliminary approval of a settlement with Asiana. (Doc. 422.) This Court granted preliminary approval on February 18, 2011. (Doc. 462.) On March 11, 2011, Plaintiffs moved for final approval of the settlement. (Doc. 467.) On July 15, 2011, this Court approved the settlement (doc. 505), and entered judgment and dismissed Asiana from the case (doc. 507).

After the Asiana settlement, plaintiffs and Korean Air continued to engage in discovery and zealously litigate the case. On July 3, 2013, after months of arm's-length negotiations and mediation, plaintiffs filed a motion for preliminary approval of a settlement agreement with Korean Air. (Doc. 595.) On July 31, 2013, this Court granted preliminary approval of the settlement agreement. (Doc. 608.) On October 4, 2013, Plaintiffs filed a motion for attorneys' fees and reimbursement of expenses. (Doc. 623.)

**B.** **The Settlement Agreement and Attorneys' Fees**

1. **Terms of the Settlement Agreement**

The Korean Air settlement resulted from arm's-length negotiations conducted under the supervision and with the assistance of former United States District Judge Layn Phillips as the parties' mediator. It confers substantial benefits on the Class in the form of $39 million in cash and coupons providing $26 million in credits against the cost of air travel. *Id*. The Court appointed the Chicago Clearing Corporation to create a market for the sale and exchange of the coupons for Class members who do not wish to use them for their own travel. (Doc. 608 ¶ 17.) Together with the settlement with Asiana, the entire settlement sum totals $86 million, including $50 million in cash and $36 million in coupons. *See* (Doc. 679 (Ex. C) at 7.)[3] This Court found that "this is a significant settlement sum." *Id*. at 8.

2. **Class Notice Process**

Plaintiffs' Settlement Class Counsel went to great lengths to notify approximately potential Class members of the proposed settlement. Notice was provided to one million potential Class members through direct mail, and 340,000 emails were sent to potential Class members. *Id*. at 9; (Doc. 694 at ¶ 9) (finding that the notice was the "best notice practicable"). The Court has reiterated that notice was provided through paid media, news media, a settlement website, a toll-free support line with English and Korean speakers, and postcards mailed with English and Korean taglines directing potential Class members to the website. *Id*. The advertisements were in both Korean and English and ran in 35 Korean publications in addition to several major newspapers, and news stories appeared more than 270 times. *Id*. at 9-10. This Court found that "[a]ll reasonable efforts were made to

---

[3] This Court made several findings related to the coupons that it labeled "important," including that they are "freely transferable," "not subject to any blackout dates," not subject to any redemption or other fees, are "valid for a significant period of time" and can be exchanged "for cash" through the market created by the Chicago Clearing Corporation. (Doc. 679 (Ex. C) at 8.)

identify [and] to notify class members." *Id.* at 11. As a result, more than 90,000 Class members have filed claims.

### 3.   **Attorneys' Fees**

Plaintiffs' Settlement Class Counsel requested attorneys' fees at the Ninth Circuit's benchmark of 25% of the Class recovery. *See* Doc. 624. As this Court found, the fees are "fair, appropriate and reasonable whether expressed as a percentage of the cash and coupon components of the settlements or by reference to the total attorneys' fee lodestar." (Doc. 695 at ¶ 4.) Plaintiffs briefed extensively the basis for the fee award, (doc. 624), and responded to each objection raised by the Objectors, (doc. 661 at 17-24); *see also* doc. 679 (Ex. C). The fee award provides that "counsel will be paid in the same coupons as the Class for the portion of the settlements attributable to the coupons." (Doc. 695 at ¶ 5.) As this Court stated, the structure of the fee award "set a high bar for other cases." (Doc. 679 (Ex. C) at 20.)

### C.   **The Objections**

More than 90,000 individuals filed claims with the court-appointed claims administrator, and only three objections were submitted. Two of the objectors (Johnson and Nedlouf) have appealed this Court's orders.

### 1.   **The Johnson Objection Was Filed by a Discredited Serial Objector**

Joseph Darrell Palmer, Objector Johnson's counsel, is a serial objector whose business model is to file minimal paperwork with conclusory assertions, as he did here, and then appeal and hold hostage the relief to the class in the hopes that counsel will pay him off to withdraw his objection or drop his appeal.

As this Court noted, "Mr. Palmer has been deemed or found to be a serial objector." (Doc. 679 (Ex. C)); *see id.* at 12 (citing cases). Mr. Palmer has been discredited and sanctioned by many courts. *See, e.g., In re Oil Spill*, 2013 U.S. Dist. LEXIS 4595, at *154 fn. 40 (E.D. La. Jan. 11, 2013). Courts have noted that as a professional objector, Palmer's intervention in cases consists of filing many,

1   ultimately rejected, objections, "suggesting that the actions were to disrupt and
2   delay." *Arthur v. Sallie Mae, Inc.*, No. C10-198JLR (W.D. Wa. Sept. 14, 2012) (Ex.
3   D) at 16; *see also In re Uponor*, 2012 WL 3984542, at *3 (D. Minn. Sept. 11, 2012)
4   ("The Palmer Objectors' objections and subsequent appeal appear little more than
5   dilatory tactics of questionable motivation."). Courts have also found that Palmer has
6   repeatedly engaged in "bad faith and vexatious conduct" as an objector to class
7   action settlements. *See e.g.*, *In re Uponor*, 2012 WL 3984542, at *3-4 (imposing
8   $170,000 appeal bond on the Palmer objectors). Mr. Palmer was recently held in
9   contempt of court and sanctioned for his refusal to respond to discovery. *In re TFT-*
10  *LCD (Flat Panel) Antitrust Litig.*, 2013 U.S. Dist. LEXIS 34845, at *42-44 (N.D.
11  Cal. Mar. 12, 2013) (finding Palmer and his objector clients—his wife and aunt—in
12  civil contempt and awarding monetary sanctions).

13      Mr. Palmer also has a well-documented history of making misrepresentations
14  to the courts and his clients. In fact, Mr. Palmer's sworn misrepresentations have
15  recently resulted in a disciplinary proceeding brought against him by the California
16  State Bar. *See* Exs. K, L. The proceedings involve claims that he made false
17  statements in petitions seeking *pro hac vice* admission in order to pursue objections
18  to class action settlements. In addition, this past March one of Mr. Palmer's objector-
19  "clients" withdrew her supposed objection to a class action settlement, declaring
20  under penalty of perjury, "I have never before in my life met Darrell Palmer, I never
21  retained Mr. Palmer. . . never authorized anyone to file any documents on my
22  behalf" and explained that Mr. Palmer—her sister's previous employer—had
23  fraudulently used her name to lodge an objection and an appeal its denial. *In re:*
24  *Netflix Privacy Litig.*, Case No. 11-CV-00379 (EJD) Doc. 343-1 ¶ 8 (March 7, 2014)
25  (Ex. E). Only a few months prior to that case, another group of Mr. Palmer objectors
26  moved to dismiss their own appeal because "unbeknownst to [the objectors], Mr.
27  Palmer made inaccurate representations to the District Court" and the Fifth Circuit.

28

*In re Deepwater Horizon*, Case No. 13-30221, Doc. 512341347 (5th Cir. Nov. 22, 2013) (Ex. I) at 14.

In *Sallie Mae*, a class action case filed in this circuit, the district court excoriated Mr. Palmer for repeatedly lying to the court. *See* Ex. D at 4-18. Mr. Palmer represented two objectors (and an intervenor) to the settlement and then submitted a motion for attorneys' fees seeking over $1 million. In rejecting this application, the court pointed out that (1) his stated basis for claiming attorneys' fees was false; (2) he had an associate who was not admitted sign court filings; (3) it was "undisputed that Mr. Palmer made a false statement in his pro hac vice application"; (4) he "submitted false pro hac vice applications in at least three other cases"; and (5) he "made several other misrepresentations in his motions for attorneys' fees." *Id*. He should not be permitted to continue his delay tactics against the interests of the Class.

### 2. The Nedlouf Objection Was Filed by a Close Relative Who Swore Under Oath That Nedlouf's Objection Was Motivated By Spite Towards Korean Air

Nedlouf's objection is no more credible than Johnson's. In his counsel's own words, Nedlouf's objection is animated by personal animosity against Korean Air for reasons totally unrelated to the merits of the settlement. This admission was made in January 2014, when Mr. Arter, representing his own sister in objecting to a different class action settlement, attempted to avoid being deposed. *See* Ex. F. Mr. Arter swore in his affidavit that Nedlouf objects here because he "had very specific problems with Korean Air in the way they treated him and his now deceased first wife when they attempted to take [sic] 'second honeymoon' to Korea" and because the settlement lacked "meaningful consideration." *Id*. (Arter Aff. ¶ 15 attached thereto as Ex. 4).[4]

---

[4] His assertion that the settlement, which provides to the Class $39 million in cash and $26 million in valuable coupons, does not provide "meaningful consideration" is obviously untrue, leaving only personal animus as the genuine motive for his objection.

Although Nedlouf claims he has never personally objected in other class actions, Mr. Arter represents his brother-in-law in this case and recently represented his sister in objecting to a different class settlement only to dismiss her objections in order to avoid being deposed. *See* Exs. F, G, H. Only after plaintiffs' counsel raised the issue and requested discovery of Nedlouf did Nedlouf admit his relation to his counsel. *See* Doc. 657 at 5. Nedlouf's assertions and their veracity are, to say the least, highly suspect.

Where objectors purport to represent the interests of the class, and are represented by a family member courts apply heightened scrutiny as to whether the objector's motivation is to benefit their counsel over the class. *Cf. In re: Law Office of Jonathan E. Fortman, LLC*, 2013 U.S. Dist. LEXIS 13903, at *3 (E.D. Mo. Feb. 1, 2013) ("When assessing the merits of an objection to a class action settlement, courts consider the background and intent of objectors and their counsel, particularly when indicative of a motive other than putting the interest of the class members first.").

Finally, Nedlouf never even bothered to submit a claims form in this action (either on his own behalf or on behalf of Ms. Bizjak's estate). His only apparent purpose in objecting to the settlement in this case is to be paid to go away.

### 3.   This Court Found that Both Objectors Lacked Standing and Issued an Order to Show Cause

The initial Johnson and Nedlouf declarations provided nothing more than unsupported conclusory assertions of their Class membership. *See* Docs. 635-1, 642. Neither Objector attached any records of their alleged purchases or anything whatsoever to substantiate their bald assertions. In response to the Objectors' failure to establish that they were potential Class members with standing to object, Plaintiffs moved to compel discovery. (Doc. 655.) Because of the narrow window for taking depositions before the final settlement hearing, this Court denied the discovery of Objectors and their counsel, and instead filed an Order for Objectors to Show Cause Regarding Class Membership. (Doc. 663.) The Court ruled:

None of the Objectors have established their class membership.

All of these statements of class membership are deficient. Nedlouf's and Johnson's assertions repeat the class definition without specificity and detail. . . . As such, the Court is unable to determine whether Objectors are class members as required under FRCP 23(e)(5).

Objectors are hereby ordered to show cause in writing . . . to demonstrate why their Objections should not be struck due to lack of class membership.

*Id*. at 2.

> 4.   **The Objectors' Failed to Meet Their Burden to Show They Were Class Members, They Failed to Appear at the Final Settlement Hearing, and They Never Rebutted Plaintiffs' Arguments Against Their Substantive Objections or Their Lack of Standing**

In response to the Order to Show Cause, Nedlouf and Johnson each filed supplemental declarations—Johnson filed his late. (Docs. 667, 670.) Despite being given this second chance to show their Class membership and standing to object, the Objectors failed to meet their burden. (Doc. 683.) Plaintiffs also filed a detailed supplemental memorandum rebutting each objection on the merits, (doc. 661), to which Objectors never responded.

This Court held a final settlement hearing on December 2, 2013. *See* Doc. 679 (Ex. C). The hearing was a third opportunity for Objectors to present evidence of their status as Class members with standing to object, and another opportunity to present the merits of their objections. Despite their promises to appear at the hearing, *see* docs. 635 at 2, 640 at 1, neither Objector nor their counsel appeared. Three court days prior to the hearing, Nedlouf filed a notice that he would not appear because he "does not see any benefit to his appearance via counsel at the final approval hearing." (Doc. 668 at 2.) Thus, Nedlouf and Johnson avoided being questioned by the court, forfeited their opportunity to offer further explanation, and offered no

evidence to rebut Plaintiffs' arguments as to why the objections were meritless and why their supplemental declarations failed to meet Objectors' burden to prove Class membership and standing. At the hearing, this Court carefully considered each and every objection on the merits. *See* Doc. 679 (Ex. C). Plaintiffs also raised several specific objections to both Objectors' standing to object. *See Id*. at 30-37.

On December 6, this Court issued an Order Striking Objections for Failure to Show Class Membership. (Doc. 684.) This Court ruled that Johnson had failed to show that he was a potential Class member or had standing to object. *Id*. at 3. This Court also ruled that Nedlouf had failed to show that he was a potential Class member or had standing to object on behalf of his "deceased former spouse." *Id*. at 4. On the basis of these factual findings, the Court struck the objections "due to lack of class membership" and found, in any event, that the objections lacked merit. *Id*.

### D.     Final Settlement Approval and Award of Attorneys' Fees

On December 23, 2013, the Court issued its Amended Final Judgment approving the settlement. (Doc. 694.) The Court found and concluded that the Objectors' objections were "without merit" and that the Objectors "lack standing to object" for the reasons set forth in its previous order striking the objections. *Id*. at ¶ 10 (citing Doc. 684). Thus, the Court "overrule[d] the objections in all respects." *Id*. The Court stated further that the "settlement is, in all respects, fair, adequate and reasonable to the Class." *Id*. at ¶ 11.

On the same date, the Court issued its Order Granting Plaintiffs' Motion for an Award of Attorneys' Fees and Reimbursement of Expenses. (Doc. 695.) Therein, this Court found that the requested award of 25% of the cash and coupon components was "fair, appropriate and reasonable." *Id*. at 2. The Court reviewed at length the reasons why the coupons were valuable and noted that "plaintiffs' counsel will be paid in the same coupons as the Class for the portion of the settlements attributable to the coupons." *Id*. at ¶ 5. The court found that the settlements with Korean Air and Asiana "were reached following extensive, arm's length negotiations between the

parties, and that the settlements were negotiated in good faith." *Id*. at ¶ 7. Again, the Court found that the objections were "without any merit" and that the Objectors "lack standing to object." *Id*. at ¶ 10.

### E.      Costs Resulting from Objectors' Appeals

As set forth in the Westerman Declaration, Plaintiffs conservatively estimate that Class Counsel will incur $762 in copying and binding costs for each appeal pursued by an Objector. These costs are conservative because, as one example, they do not include the costs of filing any motion for summary disposition and/or sanctions, which is understated given the lack of merit of these appeals.

In addition, for each additional month the settlement funds remain open, the court-appointed claims administrator incurs significant costs and expenses, including such items as maintaining the post office box, staffing the call center with customer services representatives available through a toll-free number, updating the website, and responding to Class member inquiries (which increase as more time passes). Based on the claims administrator's experience to date in responding to class member inquiries and its background in settlements of similar size and complexity, additional incremental administrative costs caused by the delay will run approximately $25,000 per month, amounting easily to over $290,000 total, assuming even a year's delay for the appeals to be heard. *See* Declaration of Niemiec. These estimates might more realistically assume a 17-month delay because non-prisoner civil appeals to the Ninth Circuit take an average of more than 17 months to be resolved. *See* Ex. A.[5]

### III.    **ARGUMENT**

### A.      **Requiring an Appeal Bond is Appropriate**

Rule 7 of the Federal Rules of Appellate Procedure provides that "[i]n a civil case, the district court may require an appellant to file a bond or provide other

---

[5] *See also Dennings v. Clearwire Corp.*, 928 F.Supp.2d 1270, 1272  (W.D. Wash. 2013) (noting that the median length of a Ninth Circuit appeal is 17.4 months).

security in any form and amount necessary to ensure payment of costs on appeal." The determination of the amount of a bond imposed under Rule 7 is left to the discretion of the district court. *See* Fed. R. App. P. 7, 1979 Advisory Committee notes ("The amended rule would leave the question of the need for a bond for costs and its amount in the discretion of the court.").

In addition to the costs permitted under Rule 39 of the Federal Rules of Appellate Procedure,[6] it has been held that the administrative costs associated with the delay in implementing a settlement are properly included in a Rule 7 bond "because distribution of the settlement proceeds will be unnecessarily delayed until the appeal is exhausted." *In re Broadcom Corp. Secs. Litig.*, Case No. 01-SACV-275 DT (MLGx), 2005 U.S. Dist. LEXIS 45656, at *9-10 (C.D. Cal. Dec. 5, 2005) (imposing a Rule 7 bond that included $517,700 in administrative delay costs) (internal quotation marks omitted).[7] Courts within the Ninth Circuit have frequently included such administrative delay costs in Rule 7 bonds. *See In re Netflix Privacy Litig.*, 2013 WL 6173772, at *4 (imposing a Rule 7 bond including $21,344 in projected administrative delay costs including the cost of "maintaining and administering the settlement website and toll-free phone number" and "answering questions from class members"); *Dennings*, 928 F. Supp. 2d at 1272 (imposing Rule 7 bond amount including $39,150 associated with additional settlement administration costs); *Miletak v. Allstate Ins. Co.*, Case No. 06-C-03778 JW, 2012 WL 3686785, at *2 & n.5 (N.D. Cal. Aug. 27, 2012) (imposing a Rule 7 bond

---

[6] *See* Fed. R. App. P. 39(e) (itemizing (1) the preparation and transmission of the record; (2) the reporter's transcript, if needed to determine the appeal; (3) premiums paid for a supersedeas bond or other bond to preserve rights pending appeal; and (4) the fee for filing the notice of appeal).

[7] The costs do not include additional damages or attorneys' fees unless allowed under a fee-shifting statute. *See In re Netflix Privacy Litig.*, Case No. 11-CV-00379, 2013 WL 6173772, at *4 (N.D. Cal. Nov. 25, 2013) (citing *Azizian v. Federated Dep't Stores, Inc.*, 499 F.3d 950, 958-59 (9th Cir. 2007)).

including administrative costs "to continue to service and respond to class members' needs pending the appeal"); *In Re Wal-Mart Wage & Hour Empl. Practices Litig.*, Case No. 06-CV-00225 PMP-PAL, MDL 1735, 2010 U.S. Dist. LEXIS 21466, at *18 (D. Nev. Mar. 8, 2010) (imposing a Rule 7 bond of $500,000 on each objector to cover, *inter alia*, the "administrative costs" resulting from delay).

As set forth in the attached declaration of Robin M. Niemiec of Rust Consulting, Inc., the court-appointed Claims Administrator, Objectors' appeals will cause the Class to incur several types of administrative costs associated with the delay such as remaining in contact with Class members, sending notices to apprise the Class of Objectors' appeals and to keep them informed about the status of the appeal, paying monthly fees for maintaining the settlement website, providing call center representatives for phone support to answer inquiries and maintaining updated contact information for all of the roughly 90,000 class members who have submitted claims in the case while the appeal is pending. Those expenses are estimated to be approximately $290,000, assuming one year's delay.[8]

## B. All of the Factors that the Ninth Circuit Requires this Court to Consider Support the Imposition of a Bond

There is clear statutory basis for imposing the administrative delay costs at issue here. A district court may include in a Rule 7 bond the administrative cost of court-appointed experts pursuant to Rule 7 and 28 U.S.C. § 1920(6). Section 1920 provides that a "judge or clerk of any court of the United States may tax as costs the following: . . . (6) Compensation of court appointed experts . . . ." And Rule 7 includes the "costs" contained in § 1920. *See Nalder v. United Auto. Ins.*, 2:09-CV-1348-ECR-GWF, 2011 WL 4905717 (D. Nev. Oct. 14, 2011) (noting that the Ninth

---

[8] Each Objector should be jointly and severally liable for the full amount of the delay costs as each is individually responsible for the delay, and thus each Rule 7 Bond may include the full cost associated with the delay. *See, e.g.*, *In re Netflix Privacy Litig.*, 2013 WL 6173772 at *4 (imposing full bond amount on each objector).

Circuit has held "that the costs enumerated in Rule 39 are among the costs available on appeal but not necessarily the only costs allowable on appeal" and thus "the idea of costs on appeal suggests that they would be limited to the sort of costs described in Rule 39(c), 39(e), and 28 U.S.C. § 1920" and certain attorneys' fees); *In re Countrywide Fin. Corp. Customer Data Sec. Breach Litig.*, 3:08-MD-01998, 2010 WL 5147222 (W.D. Ky. Dec. 13, 2010) ("The costs referenced by Rule 7 are contained in 28 U.S.C. § 1920 and Federal Rule of Appellate Procedure 39."); 20 MOORE'S FEDERAL PRACTICE § 307.10[2] (3d ed. 2003) ("The costs of appeal for which the [Rule 7] bond ensures payment are those authorized by 28 U.S.C. § 1920 and Appellate Rule 39."); 16A WRIGHT & MILLER, FEDERAL PRACTICE & PROCEDURE § 3953 (4th ed. database updated April 2014) ("Costs on appeal for which a Rule 7 bond can be required include the costs authorized in 28 U.S.C. § 1920 to the extent those costs relate to the appeal.").

Here, plaintiffs have clearly identified the basis for their cost estimate and 28 U.S.C. § 1920(6) provides clear statutory basis for recovering the costs of court-appointed experts in this case. *See* Doc. 608 ¶ 16 ("Rust Consulting, Inc. is hereby appointed to be the Settlement Administrator" and subject to the Court's jurisdiction). Thus, this case is readily distinguishable from cases in which plaintiffs provided no statutory basis for imposing certain costs.[9]

---

[9] *See Schulken v. Washington Mut. Bank*, Case No. 09-CV-02708 LHK, 2013 WL 1345716, at *8-9 (N.D. Cal. Apr. 2, 2013) (declining to award administrative delay costs in a Rule 7 appeal bond where plaintiff did not "concretely identify the basis for their $10,000 estimate, nor clearly distinguish the projected costs from those that could be claimed as attorney's fees"); *In re Toyota Motor Corp.*, 2013 WL 5775118, at *2 (C.D. Cal. Oct. 21, 2013) (declining to award administrative cost delays because class plaintiffs could not "identify any applicable fee-shifting statute" that would entitled them to costs on appeal). Because the costs here are recoverable under 28 U.S.C. § 1920(6), this case is also distinguishable from *In re Magsafe*, where in a non-precedential memorandum, the Ninth Circuit held that the district court erred in requiring an appeals bond "given that the only applicable fee-shifting

Rule 7 does not provide explicit guidance regarding the factors to be considered in deciding whether the imposition of an appeal bond is appropriate. However, in applying Ninth Circuit authority, district courts in this Circuit have articulated three potentially relevant factors: (i) appellant's financial ability to post a bond; (ii) the risk that appellant would not pay the costs if the appeal loses; and (iii) an assessment of the likelihood that appellant will lose the appeal and be subject to costs. *In re Netflix Privacy Litig.*, 2013 WL 6173772, at *3 (citing cases); *Miletak*, 2012 WL 3686785, at *1; *see also Figure Eight Holdings, LLC v. Dr. Jays, Inc.*, 534 F. App'x 670, 670 (9th Cir. 2013) (relying on these three factors where the district court relied on them and the parties did not dispute their use on appeal).

> 1.    **The burden is on the Objectors to prove they are unable to post a bond, and there is no evidence that Objectors are unable to do so.**

In applying these factors, courts within the Ninth Circuit have found that under the first factor, if the appellant does not submit financial information to indicate that she is financially unable to post a bond, this weighs in favor of requiring the bond. *See, e.g.*, *Schulken*, 2013 WL 1345716, at *4; *Embry v. ACER America Corp.*, 2012 WL 2055030, at *1 (N.D. Cal. June 5, 2012) ("In the absence of evidence that posting a bond will pose a substantial hardship, this factor weighs in favor of requiring a bond."); *Fleury v. Richemont North America, Inc.*, Case No. 05-C-4525 EMC, 2008 WL 4680033, at *7 (N.D. Cal. Oct. 21, 2008) (finding insufficient appellant's mere contention that she would be unable to pursue an appeal if the court imposed a bond of $380,644.88).

Plaintiffs seek leave to take discovery from each objector to ascertain the ability of each objector to post a bond, and satisfy the first factor of the test. As the record now stands, there is no evidence either way regarding either Objector's ability

---

statute" in that case was Rule 39.  *In re Magsafe Apple Power Adapter Litig.*, Case No. 12-15757, -- Fed. Appx. --, 2014 WL 1624493, at *1 (9th Cir. Apr. 24, 2014).

to post a bond. Each of the Objectors is represented by counsel. Each of the Objectors has paid the $505.00 docketing fee to take his appeal. *See Gemelas v. Dannon Co., Inc.*, Case No. 08-CV-236, 2010 WL 3703811, at *2 (N.D. Ohio Aug. 31, 2010) (finding it persuasive that objector "apparently has the funds to appeal class action settlements") (relied on by *Schulken*, 2013 WL 1345716, at *4). And Objector Johnson's failure to initially pay the filing and docketing fees provides additional evidence that he, and Mr. Palmer, will shirk any responsibility to pay costs. *See* Doc. 702.

> 2. **There is a substantial risk, particularly with out-of-state objectors, that Objectors will not pay the costs if their appeals are unsuccessful.**

In considering the second factor, courts have held that if the appellant resides outside of the jurisdiction of the Ninth Circuit, this also "weighs in favor of requiring a bond." *Embry*, 2012 WL 2055030, at *1; *Fleury*, 2008 WL 46680033, at *7.

There is a substantial risk that Objectors will not pay the costs if their appeals are unsuccessful. Ninth Circuit courts have recognized that collecting costs from out-of-state appellants may be difficult, and all of the Objectors are out-of-state. (Doc. 635-1 at 2) (Nedlouf resides in Georgia); (Doc. 642) (Johnson resides in Dubai, United Arab Emirates).[10] Indeed, Johnson's attorney, Mr. Palmer, has explicitly indicated that neither he nor his client is inclined to comply with legal process. *See* Ex. B (email from Mr. Palmer). As discussed *supra*, Johnson did not initially pay the required appellate fees. Still further, as this Court has already articulated, "Mr. Palmer has been found to be a serial objector sanctioned by courts for his conduct." Ex. C at 12 (citing cases). It seems evident that Mr. Palmer may not have fully informed Johnson of the costs he may be liable to pay upon losing his appeal, and that Johnson may then refuse to pay them.

---

[10] *See Schulken*, 2013 WL 1345716, at *5; *Embry*, 2012 WL 2055030, at *1; *Fleury*, 2008 WL 46680033, at *7.

### 3.    There is a substantial likelihood that Objectors will lose their appeals and be subject to costs.

Finally, as made clear in the discussion above, there is a substantial likelihood that Objectors will lose their appeals and be subject to costs. Where the district court has "carefully considered" objections and found them lacking merit, this factor "weighs heavily in favor of requiring a bond." *Embry*, 2012 WL 2055030, at *1; *see also Fleury*, 2008 WL 46680033, at *8 & n.3 (concluding the same even where appeal was in good faith and not frivolous); *Miletak*, 2012 WL 3686785, at *2 (imposing $60,000 appeal bond where court thoroughly considered objections and found them to be meritless).

Here, this Court carefully considered every objection being appealed, and the Court found them all meritless.  *See* Doc. 684 at 4, Doc. 694 at ¶ 10; Doc. 695 at ¶ 10; *see generally* Doc. 679 (Ex. C). Moreover, this Court concluded that the Objectors lack standing. *See* Doc. 684. The Court provided multiple opportunities to the Objectors to present evidence of their standing and to substantiate their objections. The Objectors did not—and could not—do so.

Particularly given this Court's meticulous review of every aspect of the settlement and each category of objection lodged to the settlement, and the discretion that review will be afforded,[11] the Ninth Circuit is likely to conclude that the Objectors lack standing to take an appeal in the first place.[12] Furthermore, given the

---

[11] *See, e.g., Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998) ("We have repeatedly stated that the decision to approve or reject a settlement is committed to the sound discretion of the trial judge because he is 'exposed to the litigants, and their strategies, positions and proof.'" (citation omitted)); *see also id.* at 1027 ("The district court's final determination to approve the settlement should be reversed 'only upon a strong showing that the district court's decision was a clear abuse of discretion.'" (citation omitted)).

[12] Plaintiffs have already briefed this issue in their motions to dismiss the Objectors' appeals, and the Ninth Circuit has ordered that those arguments may be incorporated into the merits briefing.

Objectors' dubious motives in filing their objections, it is likely that the Ninth Circuit will see these Objectors as more concerned with exerting leverage for their own benefit than attempting to improve any aspect of the settlement for the benefit of the Class.[13]

### C.     Plaintiffs Seek Discovery of the Appealing Objectors

Plaintiffs seek discovery of the appealing Objectors. Plaintiffs have never had an opportunity to pursue such discovery, and recent developments highlight why such discovery is necessary. Plaintiffs seek to depose each Objector well before Plaintiffs answering brief is filed on September 29, 2014.[14]

First, as discussed above, it is important that plaintiffs be able to build a record as to the financial ability of each of the Objectors to post an appeal bond, which will also aid in enforcing the bond after the Objectors lose their appeals.

Second, discovery will expose the Objectors' motivations for appealing.[15] It appears entirely possible that Mr. Palmer may have misled his client-objector Mr. Johnson. Recently, several of Palmer's objector-clients have withdrawn their

---

[13] *Cf. Torrisi v. Tuscan Elec. Power Co.*, 8 F.3d 1370, 1378 (9th Cir. 1993) (characterizing objectors as "spoilers" when only 20 of 113,000 class members objected and only two appealed the settlement's approval); *Glanzman v. Uniroyal, Inc.*, 892 F.2d 58, 61 (9th Cir. 1989) (imposing sanctions and recognizing, outside of class action context that "parties may use the costs of defending meritless appeals to coerce reductions in amounts properly awarded").

[14] The briefing schedule, which has already been extended, is as follows: Objectors opening brief is due August 4, 2014; Plaintiffs answering brief is due September 29, 2014; and Objectors reply is due October 20, 2014.  Ninth Cir. Case No. 14-55010, Dkt. 20.

[15] In cases where there is evidence of appellants' bad faith or vexatious conduct, courts will sometimes consider such evidence as an additional factor warranting imposition of a bond.  *See, e.g.*, *Dennings*, 928 F. Supp. 2d at 1271; *but see Fleury*, 2008 WL 4680033, at *7 (N.D. Cal. Oct. 21, 2008) (concluding that the frivolity of an appeal cannot be considered as a separate factor in the Ninth Circuit). Regardless of whether this Court considers appellants' bad faith or vexatious conduct as a factor, Plaintiffs seek discovery.

objections and stated that Palmer lied to the court and misrepresented them. *See In re: Netflix Privacy Litig.*, (Ex. E) ¶ 10 (explaining supposed objector "never retained Mr. Palmer" and Palmer fraudulently used her name to lodge an objection and appeal its denial); *In re Deepwater Horizon* (Ex. I) at 14 (moving to dismiss own appeal because "unbeknownst to [the objectors], Mr. Palmer made inaccurate representations to the District Court" and the Fifth Circuit).

In response to plaintiffs' motion to dismiss the Ninth Circuit appeal in this case, Palmer recently produced new evidence for the first time. He filed a new Johnson declaration, changing the language of the previous two declarations in a failed attempt to demonstrate his Class membership. Ninth Circuit Case No. 14-55010 Dkt. 14-2 (Ex. J). Yet, Johnson's new declaration does not mention his objection or appeal whatsoever, or indicate that he has any understanding at all of how Palmer is purporting to represent him. In fact, contrary to the proceedings in this Court, Johnson alleges that he merely submitted a claims form and has "not received rejection of the claim or any request for additional information." *Id.* at ¶ 4.   His declaration raises further doubts as to whether Johnson even knows he is objecting to the settlement, rather than merely submitting a claim.

Similarly, Mr. Arter recently dismissed his sister's objection to the *In re Cobb EMC* class action settlement to avoid being deposed. *See* Exs. F, G, H. His actions raise serious questions about his practice of lodging objections on behalf of close family members and then avoiding scrutiny by the court and counsel to test their viability. Moreover, he swore in his affidavit in that case that Nedlouf's motivation for objecting was personal animus directed toward Korean Air. Ex. F. (Arter Affidavit ¶ 15, attached as Ex. 4 thereto).

These concerns collectively warrant discovery of objectors. *See In re Netflix Privacy Litig.*, 2013 WL 6173772, at *2 ("Discovery regarding objections to a settlement agreement may be used to seek information regarding the objector's standing, the bases for the objections, his role in objecting to this and other class

settlements, and his relationships with the counsel that may affect the merits of the objection."); *id.* at *5 (simultaneously ordering discovery of objectors and imposing an appeal bond on each of them); *see also In re Cathode Ray Tube Antitrust Litig.*, 281 F.R.D. 531, 532 (N.D.Cal. 2012).

IV.   **CONCLUSION**

In order to ensure that Objectors can pay costs when the Ninth Circuit rejects their appeals, plaintiffs respectfully request that this Court impose appeal bonds in the amount of at least $290,000 against each of the Objectors. Plaintiffs also seek discovery of the Objectors in further support of the record for appeal bonds.

///

///

///

///

///

///

Respectfully submitted,

DATED:  June 30, 2014

SUSMAN GODFREY L.L.P.
MARC M. SELTZER


/s/ Marc M. Seltzer
Marc M. Seltzer

1901 Avenue of the Stars, Suite 950
Los Angeles, CA  90067
Tel: (310) 789-3100
Fax: (310) 789-3150


GLANCY BINKOW & GOLDBERG LLP
SUSAN G. KUPFER


/s/ Susan G. Kupfer
Susan G. Kupfer

One Embarcadero Center, Suite 760
San Francisco, California 94111
Telephone: (415) 972-8160
Facsimile:  (415) 972-8166


WESTERMAN LAW CORP.
JEFF S. WESTERMAN

/s/ Jeff S. Westerman
Jeff S. Westerman

1925 Century Park East, Suite 2100
Los Angeles, CA  90067
Tel:  (310) 698-7450
Fax:  (310) 201-9160

Plaintiffs' Settlement Class Counsel